347 So.2d 1054 (1977)
Dale Patton WEBB, Appellant,
v.
STATE of Florida, Appellee.
No. 75-1461.
District Court of Appeal of Florida, Fourth District.
May 27, 1977.
Rehearing Denied July 29, 1977.
Richard L. Jorandby, Public Defender, Frank B. Kessler, Tatjana Ostapoff and Mitchell J. Beers, Asst. Public Defenders, and Harry Weaver, Legal Intern, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Anthony C. Musto and Harry M. Hipler, Asst. Attys. Gen., West Palm Beach, for appellee.
*1055 DOWNEY, Judge.
Appellant Dale Webb was convicted of robbery and false imprisonment. He was sentenced to life imprisonment on the first charge and to fifteen years imprisonment on the second. On appeal he contends that the trial court committed error by a) allowing the prosecutor to impeach appellant by his silence after arrest and b) admitting evidence of an unrelated crime.
The evidence disclosed that Steven Almond, Dickey Farliss, and Indian Bill went to a party at a house in Orlando which was also attended by several members of the Outlaw Motorcycle Club. Initially, Almond remained outside. When he entered he found Dickey and Indian Bill on the floor with guns held to their heads. Webb was directing the proceedings. Eventually Almond was robbed, and he and the other two men were put in a van and taken away. As the van was being driven at high speed on the turnpike, Almond jumped from the van. He was ultimately able to contact the Highway Patrol. From information furnished by Almond, a Bolo was issued for a van matching the description of Webb's van.
At trial Webb called as a defense witness Lt. Windham of the Orange County Sheriff's Department. Windham testified that about the time the Bolo had been issued in June 1974, Webb contacted him and inquired why he had been stopped several times recently. Webb invited Windham to inspect his van if he cared to.
Webb took the stand and testified that, after he read the article in the paper in June 1974 about the incident giving rise to this case, he talked to Lt. Windham, whom he knew, and inquired about the incident and offered his van for inspection. He did this because he was not involved and he was leaving town and did not want any trouble in his absence. Webb testified further that he did not attend the party where the incident took place, as he was at Monroe's Cycle Shop in Orlando that entire afternoon. (Mr. and Mrs. Monroe had earlier testified concerning Webb's presence at their shop.)
On cross-examination the prosecutor asked Webb if he had told the police when he was arrested about being at Monroe's Cycle Shop the afternoon the alleged crimes were committed. Webb responded:
"A Well, sir, I didn't tell the police anything because I have come to a realization that I just do not, I don't talk to the police when it involves anything that has to do with the possibility of me going to jail.
"I have a lawyer sitting over there, Mr. Adams, and he talks to the police for me."
Webb now contends that it was fundamental error for the prosecutor to have inquired as to his remaining silent when arrested in February 1975. But the state counters with the argument that a) Webb opened the door to this interrogation by adducing testimony about his conversation with Lt. Windham in June 1974, and b) since the record is silent as to whether Webb was read his Miranda rights in the police station the state is free to comment on his silence. We agree with appellant's position and disagree with the state's.
To begin with, the testimony which Webb adduced had to do with a voluntary conversation some seven months before he was arrested and prior to any investigation zeroing in on him. The offensive inquiry by the prosecutor deals with Webb's silence after his arrest when he had a constitutional right to remain silent. Thus, we hold that the testimony of the June 1974 conversation did not open the door for the prosecutor to cross-examine Webb about his silence upon being arrested.
The second facet of the state's argument in support of the validity of its cross-examination is more serious.
In its brief the state contends that the record does not reflect any Miranda warnings were given to Webb when he was arrested in February 1975. The record is, in fact, silent as to whether they were given or not given. In sum, it appears to be the state's position that, if Miranda warnings are not given to a person arrested and that person chooses to remain silent, the state is *1056 at liberty at trial to attempt to impeach the defendant with that silence if he takes the stand and makes some exculpatory explanation. In support of that proposition the state cites Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), wherein in a dissenting opinion, joined by Justices Blackman and Rehnquist, Justice Stevens indicates the state might properly seek to impeach a defendant's exculpatory testimony at trial by showing his prior inconsistent silence at the time of arrest.
In response to that connection we would first point out that the opinion cited is a dissent. Secondly, Doyle received Miranda warnings, so the point was not before the Court. Thirdly, the Doyle majority rested its decision on a dual aspect, a) the inquiry relative to silence after Miranda warnings constitutes an impermissible incursion into the constitutional privilege against self-incrimination; b) Doyle's silence was not inconsistent with his exculpatory statement at trial and so the fact that he was silent was not admissible. Furthermore, we note that, while Miranda warnings make it even more offensive to use a person's silence upon arrest against him, the absence of such warnings does not add to nor detract from an individual's Fifth Amendment right to remain silent. If one has a right upon arrest not to speak for fear of self-incrimination, then the mere fact the police call his attention to that right does not elevate it to any higher level. If it were otherwise, an ignorant defendant who was advised of his right to remain silent would be protected against use of his silence to impeach him at trial; but an educated, sophisticated defendant familiar with his right to remain silent who was not apprised of that right by the police would be subject to impeachment for the exercise of a known constitutionally protected right.
In passing, we note that the case of Weiss v. State, 341 So.2d 528 (Fla. 3d DCA 1977), applied the rule of Doyle and United States v. Hall, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); to a situation which did not involve Miranda warnings. In the Weiss case the prosecutor in the interrogation of the defendant and in closing argument commented on defendant's failure to rush to the State Attorney before he was arrested and explain his position. These comments were held to require reversal.
Finally, the Hale court makes it quite clear that if the circumstances are such as to warrant an inquiry into a defendant's silence at the station house there is always a threshold question to be determined by the court: is the exculpatory statement actually inconsistent with the defendant's prior silence? 426 U.S. at 176, 95 S.Ct. 2136. If it is not, then it is inadmissible even without the protection of the Fifth and Fourteenth Amendments. For an example of lack of inconsistency see Grunewold v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). In the present case we think there was nothing inconsistent with Webb's police station silence and his alibi testimony at trial, and we also think the cross-examination as to appellant's pretrial silence violated the due process clause of the Fourteenth Amendment, Smith v. State, 340 So.2d 930 (Fla. 4th DCA 1976). For these reasons the judgment and sentence must be reversed for a new trial.
Since this case must be tried again, we will treat appellant's second point on appeal.
It will be recalled there were two other persons with Almond who were taken away in the van, Dickey and Indian Bill; all three were the subject of appellant's criminal conduct, according to the testimony. At trial a deputy sheriff was asked by the state whether he had obtained any information about Dickey and Indian Bill and he stated:
"... No information has been received from any law enforcement agency. I have been in contact with the families of both persons.
"Q Have you been able to locate them?
"A No, sir."
Webb contends that this inquiry was inadmissible because it introduced evidence of another crime into the case. We reject that contention. Dickey and Indian Bill were *1057 actually involved with Almond as subjects of the crimes perpetrated. Therefore, testimony relative to their involvement at the time of the commission of the crime was clearly part of the res gestae and admissible. Graives v. State, 127 Fla. 182, 172 So. 716 (1937); Powell v. State, 131 Fla. 254, 175 So. 213 (1937). In addition, it was not only proper but expedient for the prosecutor to account for the absence of two eyewitnesses to the crimes on trial in order to preclude the oft used defense tactic during closing argument of questioning why the state did not bring in such material witnesses to assist the jury in arriving at the truth. Thus, we find no merit in appellant's second point on appeal.
The judgment and sentence appealed from are reversed and remanded for a new trial.
REVERSED AND REMANDED.
CROSS, J., and SCHWARTZ, ALAN R., Associate Judge, concur.