422 So.2d 928 (1982)
Ulysses LEE, Appellant,
v.
The STATE of Florida, Appellee.
No. 81-2516.
District Court of Appeal of Florida, Third District.
November 2, 1982.
Rehearing Denied December 13, 1982.
*929 Bennett H. Brummer, Public Defender and David J. Finger, Sp. Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and William P. Thomas, Asst. Atty. Gen., for appellee.
Before HENDRY, NESBITT and DANIEL S. PEARSON, JJ.
DANIEL S. PEARSON, Judge.
The defendant was convicted of burglary and petit theft alleged to have occurred when he and another individual entered a scrap metal yard and attempted to remove metal without permission. The main State witnesses were two men, Undorfer and Stonaker, who testified that they were present in the yard at the time of the alleged entry, chased the perpetrators, and caught the defendant only. They further stated that they apprehended a third individual, Oliver Ball, who was seated in a car outside of the yard. The witnesses claimed they subdued the defendant and Ball, handcuffed them, and called the police.
At trial, the defendant and Ball testified that the defendant had driven a third person to the area of the yard and remained in the car with Ball.[1] While Ball and the defendant were seated in the car, this third person (whom the defendant knew as Slim) ran by with Undorfer in hot pursuit. The defendant and Ball testified that shortly after this chase, which proved unsuccessful, Undorfer and Stonaker ordered them out of the car at gunpoint; handcuffed them, returned them to the yard, and beat them in an effort to ascertain the identity and whereabouts of the third person. The police arrived, spoke to Undorfer and Stonaker, arrested the defendant and Ball, and took them to a hospital, where both were treated for lacerations of the face and scalp. No Miranda warnings were given to the defendant, and no statement was given by him to the police.
It is against this backdrop that we address the defendant's contention on appeal that reversible error occurred when the trial court overruled his objection to the prosecutor's closing argument comments:[2]
"Now don't you think that if the Defendant had just been beaten up by Mr. Undorfer, that he would have told somebody at the hospital that that's what happened. *930 But you will [sic] see it on these medical records. And, why didn't the defendant report all this to the police?" (emphasis supplied).
We think it inescapable that the comment made by the prosecutor directly called to the jury's attention the defendant's post-arrest silence. See, e.g., David v. State, 369 So.2d 943 (Fla. 1979); Clark v. State, 363 So.2d 331 (Fla. 1978); Bennett v. State, 316 So.2d 41 (Fla. 1975); Ruiz v. State, 378 So.2d 101 (Fla. 3d DCA 1979); Barnes v. State, 375 So.2d 40 (Fla. 3d DCA 1979); Knight v. State, 374 So.2d 1065 (Fla. 3d DCA 1979). The State candidly concedes as much. It argues, however, that the prohibition against comment on post-arrest silence applies only where the silence has been induced by assurances, in the form of a Miranda warning not given here, that the silence will not in any way be used against him.
Were we concerned only with whether the comment violated the defendant's due process rights guaranteed by the Federal Constitution, we would be compelled to agree that the defendant's federal constitutional right to due process was not offended. As Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), and more recently Fletcher v. Weir, ___ U.S. ___, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), make clear, the prohibition announced in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), against permitting the prosecution to call attention to an accused's post-arrest silence and to insist that because he did not speak about the facts then, as he was told he need not do, an unfavorable inference might be drawn as to the truth of the accused's trial testimony, applies only where, as Doyle itself noted, the defendant was told he need not speak.
But a state court is free to place greater restrictions on the use of post-arrest silence than the Doyle-Jenkins-Fletcher trilogy requires, since to do so merely expands, but is consistent with, the minimal due process these cases announce. Thus, in Webb v. State, 347 So.2d 1054 (Fla. 4th DCA 1977), precisely the same argument that the State makes here was rejected. Recognizing that Doyle prohibited comment on silence only after Miranda warnings, Judge Downey, speaking for the court, noted that:
"[W]hile Miranda warnings make it even more offensive to use a person's silence upon arrest against him, the absence of such warnings does not add to nor detract from an individual's Fifth Amendment right to remain silent.[3] If one has a right upon arrest not to speak for fear of selfincrimination, then the mere fact that the police call his attention to that right does not elevate it to any higher level. If it were otherwise, an ignorant defendant who was advised of his right to remain silent would be protected against use of his silence to impeach him at trial; but an educated, sophisticated defendant familiar with his right to remain silent who was not apprised of that right by the police would be subject to impeachment for the exercise of a known constitutionally protected right." Id. at 1056.
It is plain to us that the reasoning of Webb, with which we agree, is unaffected by Fletcher, which, as did Webb, considered Doyle to be restricted to the instance where silence is induced by Miranda warnings. Moreover, the view espoused in Webb fully comports with the Florida Supreme Court's view that the right to remain silent is entitled to greater protection in our state than that required by the United States Supreme Court. Compare, e.g., Willinsky v. State, 360 So.2d 760 (Fla. 1978) (harmless error rule not applicable to disclosure of the accused's silence at the preliminary hearing); Shannon v. State, 335 So.2d 5 (Fla. 1976); Bennett v. State, supra (harmless error rule not applicable to disclosure of the accused's silence at arrest) with Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, *931 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963) (harmless error rule applicable to disclosure of accused's silence if no reasonable possibility that disclosure contributed to conviction). Therefore, we hold that, as a matter of state constitutional law, it is impermissible to comment on a defendant's post-arrest silence whether or not that silence is induced by Miranda warnings. See also Weiss v. State, 341 So.2d 528 (Fla. 3d DCA 1977).
Having concluded that Lee must be afforded a new trial free from this comment on his post-arrest silence, we address one other point on appeal concerning the permissible scope of cross-examination of the State's witnesses, Undorfer and Stonaker, because of the likelihood that it may arise upon retrial. Should that occur, the trial court is to be guided by the following principles. A basic guarantee of the Confrontation Clause in the Sixth Amendment is the right of an accused in a criminal prosecution to cross-examine witnesses. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Bias of a witness is a proper subject of cross-examination as tending to discredit the witness and to affect the weight of his testimony. Davis v. Alaska, supra; United States v. Tracey, 675 F.2d 433 (1st Cir.1982); United States v. Frankenthal, 582 F.2d 1102 (7th Cir.1978); United States v. Kartman, 417 F.2d 893 (9th Cir.1969); Wynn v. United States, 397 F.2d 621 (D.C. Cir.1967). Where, as here, the defendant is black, proper inquiry may be made of the State's witnesses, not only as to their bias against the defendant as a black, Smith v. State, 404 So.2d 167 (Fla. 1st DCA 1981); Magness v. State, 67 Ark. 594, 50 S.W. 554 (1899), but also their bias against blacks in general, Smith v. State, supra; Jacek v. Bacote, 135 Conn. 702, 68 A.2d 144 (1949). Cf. Bonaparte v. State, 65 Fla. 287, 61 So. 633 (1913) (question whether in eight years sheriff had ever selected a black juror proper to impeach his denial of discrimination in jury selection). See United States v. Kartman, supra; Smith v. Civil Service Board, 289 So.2d 614 (Ala. 1974) (prejudice toward a group of which the defendant is a part is a proper subject of inquiry on cross-examination of a witness).
While the trial court may exercise discretion over the scope of cross-examination, it must insure that there will be ample latitude for pertinent inquiry and that such limitations as are placed on the cross-examination are done with solicitude for the defendant's Sixth Amendment rights. See D.C. v. State, 400 So.2d 825 (Fla. 3d DCA 1981); Lutherman v. State, 348 So.2d 624 (Fla. 3d DCA 1977); United States v. Tracey, supra; United States v. Kinnard, 465 F.2d 566 (D.C. Cir.1972); Wynn v. United States, supra. However, as in the case of other relevant evidence, evidence of bias may be inadmissible when it creates a danger of unfair prejudice, confusion of the issues, misleading of the jury, or results in a needless presentation of cumulative evidence. Smith v. State, supra at 169. Thus, for example, should the trial court find that the form of a proffered question is designed to elicit bias which may be too remote in time from the incident in question,[4]see, e.g., Morrell v. State, 297 So.2d 579 (Fla. 1st DCA 1974); Blackman v. State, 20 Ala.App. 281, 102 So. 147 (1924); Eye v. Kafer, Inc., 20 Cal. Rptr. 841, 202 Cal. App.2d 449 (1962); Missouri K & T Co. of Texas v. St. Clair, 21 Tex.Civ.App. 345, 51 S.W. 666 (1899), he might properly conclude that the probative value of an answer thereto might be outweighed by the tendency of the answer to confuse the issues or mislead the jury.[5]
Reversed and remanded.
NOTES
[1] Lee's defense was that he did not know what this third person intended to do.
[2] The defendant thereafter made a timely motion for mistrial, see State v. Cumbie, 380 So.2d 1031 (Fla. 1980), a now unnecessary step in preserving his overruled objection. See Simpson v. State, 418 So.2d 984 (Fla. 1982).
[3] In the context of the decision, the words "the Fifth Amendment right to remain silent" must be read as a generic and commonly used reference to the right as found in both the State and Federal Constitutions.
[4] There may, therefore, be a vast difference between eliciting testimony that a witness has "on occasion" or "in some instance" used an epithet to refer to black people and eliciting testimony that the witness within the recent past has done so.
[5] Although a trial judge may use his discretion to exclude false insinuations, groundless accusations, and evidence which needlessly debases the character of a witness, see United States v. Kinnard, supra, there appears to be little doubt that the question put to the State's witness, Stonaker, was asked in good faith, that is, in reliance upon his admission in deposition that he referred to blacks "in some instances" by using a racial slur.