586 So.2d 1230 (1991)
Regina Patrick IVEY, Appellant,
v.
STATE of Florida, Appellee.
No. 90-3328.
District Court of Appeal of Florida, First District.
September 18, 1991.
*1231 Nancy A. Daniels, Public Defender, Phil Patterson, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Suzanne G. Printy, Asst. Atty. Gen., Tallahassee, for appellee.
WOLF, Judge.
In this appeal from a conviction for aggravated battery, the appellant raises six issues. We find that the appellant's argument that the trial court erred in imposing certain statutory costs without notice and an opportunity to be heard is without merit in light of the supreme court's ruling in State v. Beasley, 580 So.2d 139 (Fla. 1991) (trial court need not give a defendant notice and an opportunity to be heard before imposing statutorily mandated costs). *1232 Only two other issues raised by the appellant merit discussion: (1) Whether the trial court erred in allowing evidence of prior convictions; and (2) whether the trial court erred in allowing the state to comment on the defendant's failure to assert self-defense when she had given a statement (at the time of arrest). We find that the trial court reversibly erred by admitting evidence prohibited by the Florida Evidence Code, section 90.404(2), Florida Statutes (1989), but affirm as to the other issues.
The victim testified that she had been in an argument with the appellant in front of her residence where she said the appellant approached her and cut her in several places. Another witness testified that the victim and the appellant had engaged in name calling, then they both went into their homes and returned to the street shortly thereafter and began "going around." The officer who questioned the appellant at the scene testified that he read the appellant her Miranda rights,[1] whereupon she admitted that she had been in an argument with the victim, and admitted "going and getting the razor blade and coming back," and admitted cutting the victim with the razor.
Appellant testified at trial that when she came out of her house, the victim began swinging at her with a knife, and she "went to fighting" with the razor she was holding in her hand at the time. Appellant said that she happened to be trimming her eyebrows with the razor just prior to the incident.
During cross-examination of the appellant, the state sought to elicit testimony that she had previously been convicted of improper exhibition of a deadly weapon and two counts of battery.[2] Counsel for the defense objected, pointing out that the appellant had deliberately not put on evidence of her being a peaceful person and, thus, had not put her character at issue. The court responded to the appellant's objection by stating that her defense of self-defense "makes her character and her propensity for violence a question." Over defense objection, the court permitted certified copies of all three convictions into evidence.
The appellant claims that the trial court committed reversible error in permitting the prosecutor to cross-examine her regarding specific prior crimes because the inquiry was irrelevant to any fact in issue and intended only to show bad character or propensity. The state responds that the appellant did place her character at issue by testifying that she fought in self-defense and was actually trying to get to a phone to report the victim's behavior and threats, implying that she would walk away from a fight.
The general rule expressed in section 90.404(1) is that the state may not offer testimony during its case in chief of the accused's past character to prove that the accused committed the crime in question. See, e.g., Young v. State, 141 Fla. 529, 195 So. 569 (1939). The state may only introduce such evidence to rebut character evidence first introduced by the defense. Squires v. State, 450 So.2d 208 (Fla. 1984); Dixon v. State, 426 So.2d 1258 (Fla.2nd DCA 1983). In this case, the appellant took the stand and testified,
When I came out of the house, I was going to my sister's house to call the police and tell them to get her [victim] to leave my house. She swung at me with a knife... . Me and her went to fighting because I swung back at her.
The appellant is permitted by section 90.404(1)(a), Florida Statutes, to offer evidence of "a pertinent trait" of her character. If, by testifying to the effect that she intended to avoid a fight, the appellant was actually offering evidence as to a character trait of avoiding confrontation and staying out of fights, then the state could rebut the *1233 character evidence offered by the appellant. It appears, however, in this case, that the appellant was merely testifying as to her actions during a single event which took place on the day in question. Black's Law Dictionary defines character evidence as "evidence of a person's moral standing in the community based on reputation." Black's Law Dictionary at 211. "Character" apparently relates to the attributes of a person which may be gleaned from a consistent pattern of behavior. See generally, Ehrhardt Florida Evidence § 90.404. Testimony regarding a person's behavior during one incident cannot be interpreted as character evidence as anticipated in the Florida Evidence Code. Appellant's testimony in this case cannot be viewed as offering evidence of a pertinent trait of her character. We, therefore, find that the trial court erred in permitting the state to cross-examine the appellant regarding specific prior convictions.[3]
Appellant also asserts that the state impermissibly commented on her right to remain silent. At trial, the appellant indicated for the first time that she may have acted in self defense  that she saw a knife and she was afraid of the victim. During cross-examination, the state sought to ask the appellant why she did not indicate to law enforcement officers at the time of arrest that she had acted in self-defense. Defense counsel objected on the basis that the question called for an answer that would be a comment on the appellant's right to remain silent, and moved for a mistrial. The court ruled that "her raising that issue [self-defense] allows the state to cross-examine her on what she said to people about self-defense immediately after the incident."
In State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986), the supreme court emphasized, "any comment, direct or indirect, by anyone at trial on the right of the defendant not to testify or to remain silent is constitutional error and should be avoided." In Watson v. State, 504 So.2d 1267 (Fla. 1st DCA 1986), rev. denied, 506 So.2d 1043 (Fla. 1987), this court held that for such an error to be found, the accused must have exercised his right to remain silent. See also Donovan v. State, 417 So.2d 674 (Fla. 1982). In the instant case, as in Watson and Donovan, the appellant made certain statements to the arresting officers regarding her fight with the victim after her Miranda rights had been given to her. A police officer who was at the scene testified at trial that prior to requesting any information from the appellant, he advised her of her rights by reading the Miranda warning from a preprinted card. The officer further testified,
I asked her if she understood each of these rights. She said she did. And I asked her if she would talk to me about the incident with [the victim], and she said she would.
.....
And she told me basically the same story ... that there was an argument between herself and [the victim]. She mentioned going and getting the razor blade and coming back, and the argument still continued, and admits she lashed at her and cut [the victim] several times with this razor we have possession of.
Q. Did she say she intended or meant to do what she had done.
A. Yes.
Q. Did she at any time during this conversation tell you that [the victim] had a weapon?
A. No sir.
During his testimony, the officer stated that no weapons were found at the crime scene and that interviews with persons at the crime scene did not indicate another weapon. The appellant also testified that after she had been read her Miranda *1234 rights, she agreed to talk with the police officer and tell him her version of the story.
Where the defendant does not "remain silent" at the time of arrest, the constitutional right to remain silent is found not to have been exercised, and no fundamental error occurs when the prosecution points out inconsistencies in the defendant's exculpatory statements at trial. See Anderson v. Charles, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980); Watson v. State, supra. Although in State v. Smith, 573 So.2d 306 (Fla. 1990), the supreme court found reversible error in a factually similar situation as the instant case, Smith is distinguishable in that the defendant there made the statement while he was in custody at the scene of the crime, but before he had been advised of his Miranda rights. See Smith, supra at 317 n. 6. In the instant case, the appellant herself testified that after receiving her Miranda warning, she continued to talk to the arresting officers about the incident. The record indicates that the appellant's statement to the police officer at the scene, following her Miranda warning, was a complete detailed statement, indicating that the absence of a key fact was not intended as an effort to assert the right to remain silent. Because the appellant in this case did not remain silent at the time of arrest and, in fact, made a rather complete statement following her Miranda warning, we find that the trial court did not err in allowing the state's cross-examination comment on the presentation of the self-defense theory for the first time at trial. We find such comment was not an impermissible comment on the appellant's silence, but rather reflected an inconsistency with her prior statement.
We reverse and vacate the conviction with directions to grant a new trial.
WIGGINTON, J., concurs.
ALLEN, J., dissents with written opinion.
ALLEN, Judge, dissenting.
I would hold that the trial court violated the appellant's constitutional right to silence by allowing the prosecutor to introduce evidence about what the appellant did not say in her statement to the police officer.
Initially, I must respectfully disagree with the majority's characterization of the record in two respects. First, I do not agree that the appellant's statement was "rather complete." I also do not agree that the appellant's trial testimony provided the first suggestion that the appellant may have acted in self defense. My disagreement on these points is based upon the testimony of the officer who took the appellant's statement. He testified that he talked with the appellant for only a couple of minutes. He also testified that when the appellant told him that she had cut the alleged victim only after being threatened, he asked no follow-up questions as to the details of the threat. Rather, he simply "stopped [the conversation] at that point." This testimony indicates that the statement given by the appellant was something less than complete. It also indicates that the appellant was claiming from the outset that her actions were taken because of threats by the alleged victim, thus suggesting self defense.
The most compelling rationale for my view, however, is that I am unable to find a material distinction between the facts of this case and those present in State v. Smith, 573 So.2d 306 (Fla. 1990). There, the court held that the prosecutor's questions about what Smith did not say in his statement at the scene of a homicide violated his constitutional right to silence. Here, I believe the prosecutor's questions about what the appellant did not say in her statement at the scene of the battery likewise violated the appellant's constitutional right to silence. The only distinction suggested by the majority is that the non-statement here was after Miranda warnings were administered, but in Smith, the non-statement was before Miranda warnings were *1235 given. For several reasons, I cannot agree that the absence of Miranda warnings is a material fact in the supreme court's holding in Smith.
First, the Smith opinion does not indicate that Miranda warnings had not been given. It simply indicates that this was "apparently" the situation. If the court had intended the absence of warnings to be material to its holding, it surely would not have expressed the fact in such tentative terms.
Second, the absence of warnings is mentioned only in footnote 6. Footnotes are not normally used for the purpose of expressing facts which are material to the holding in an opinion. Footnotes are more typically used for other purposes, such as the expression of an aside or digression.
Third, a careful reading of the footnote reveals that the court's purpose in mentioning Miranda is to express the aside that Miranda has nothing to do with Smith's argument or with the court's holding. The complete text is as follows:
Apparently, Smith made the quoted statement when he was in custody at the scene of the killing, but before he had been advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Smith does not challenge the admissability of his initial statement to police. His claim goes only to the prosecutor's argument and questions asked of witnesses about what Smith did not say in his statement.
The point made by the footnote is that Miranda is not implicated, because Smith's challenge is not to the admissability of his statement. Rather, Smith challenges the prosecutor's efforts to draw the jury's attention to what he did not say.
Finally, in Florida, the Miranda decision has generally been held to be irrelevant to the resolution of arguments claiming improper comment upon the right to silence. See, e.g., Lee v. State, 422 So.2d 928 (Fla. 3d DCA 1982), review denied, 431 So.2d 989 (Fla. 1983); Webb v. State, 347 So.2d 1054 (Fla. 4th DCA), cert. denied, 354 So.2d 986 (Fla. 1977). Lee was cited as authority in Smith.
I believe that Smith dictates a determination that the trial court erred in allowing the prosecutor to offer evidence of the nonstatements of the appellant. Accordingly, I would reverse and remand for a new trial.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The convictions in question were misdemeanors and, thus, would be inadmissible pursuant to § 90.610, Fla. Stat. (1989).
[3] In light of our ruling that the defendant's character was not at issue, it is unnecessary for us to determine whether the use of prior convictions would have been an appropriate method of rebutting character evidence.