639 So.2d 621 (1994)
Antonio WRAY, Appellant,
v.
STATE of Florida, Appellee.
No. 93-0667.
District Court of Appeal of Florida, Fourth District.
May 11, 1994.
*622 Ronald K. Dallas of Ronald K. Dallas, P.A., Ft. Lauderdale, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Joan L. Greenberg, Asst. Atty. Gen., West Palm Beach, for appellee.
KLEIN, Judge.
Defendant, Antonio Wray, was convicted of second degree murder with a deadly weapon arising out of a stabbing death. Defendant argues that the prosecutor improperly infringed on his right to remain silent when he commented about certain details that the defendant left out of his statement to the police. He also argues that the trial court erred in imposing a departure sentence based on a finding that the crime was racially motivated. We affirm.
On the evening of July 31, 1992 in a Fort Lauderdale neighborhood, a fight occurred between a group of African-Americans and a group of Haitian-Americans. There had been tension between the two groups. Neither this defendant nor co-defendant Kevin Clark were involved in the fight; however, Clark's cousin, Michael Rose, an African-American, was beaten by a Haitian-American.
The next day defendant and Clark were observed carrying a bat, and heard talking about getting revenge for the beating of Rose the night before. There was evidence that they did not know the identity of the person who had beaten Rose. That evening defendant and Clark, who are both African-Americans, attacked Haitian-American Rommel Agledor. The victim later died of stab wounds he received in the attack. An eyewitness to the attack in which Agledor was killed identified both defendant and Clark and heard one of them say as they were walking away from the victim, "fuck nigger beat up my brother."
Defendant, after being read his Miranda rights, gave a taped statement to the police which was played during the trial. Defendant was asked if his co-defendant Clark knew who had beaten Clark's cousin the previous night. Defendant stated that Clark "didn't really say. He just said it was some Haitian." Defendant also said in his statement that he and co-defendant Clark were waiting on some stairs when they saw the victim walk by and Clark said, "there goes one of the cats right there." They then attacked the victim and killed him.
At sentencing the court stated on the record:
I find that there's reason to aggravate, and therefore, go outside the maximum penalty as recommended in this case. It's my belief based upon the evidence that I heard, that the fatal wounds inflicted in this case were inflicted by Antonio Wray. And he was the one who actually caused the death of Rommel Agledor. Why, I have no idea. He didn't know the man, *623 didn't really have an ongoing problem, wasn't related to Michael Rose.... I find that the offense was racially motivated and because of that, I'm going to upward depart, and its the judgment of this Court, sentence of law, that the defendant be sentenced to thirty years in Florida State Prison....
Defendant maintains that he and his co-defendant were seeking to avenge a fight between a Haitian-American and his codefendant's cousin, and the fact that they attacked the wrong Haitian-American does not make this a racially motivated crime. The proof necessary to support a departure sentence is the preponderance of the evidence. Fla.R.Crim.P. 3.701(b)(6).[1] We conclude that the record supports the trial judge's finding that this was racially motivated, i.e., that defendant and co-defendant exacted revenge on this victim because he was Haitian-American, with no regard for whether he was the person who beat Rose in the fight the previous night.
The authority for allowing a departure sentence for a racially motivated crime is found in Grant v. State, 586 So.2d 438 (Fla. 1st DCA 1991). Defendant attempts to distinguish Grant because in Grant the crime occurred prior to the effective date of section 775.085, Florida Statutes (1989), the hate crime statute. The hate crime statute provides for enhanced penalties for felonies or misdemeanors of certain degrees:
if the commission of such felony or misdemeanor evidences prejudice based on the race, color, ancestry, ethnicity, religion, sexual orientation, or national origin of the victim....
The statute makes a third degree felony punishable as a second degree felony, and makes a second degree felony punishable as a first degree felony. The statute contains no provisions regarding first degree or life felonies.
Since defendant was convicted of second degree murder, a life felony, the hate crime statute is not applicable. What is applicable is the case law which has developed in this area, and we agree with the first district's conclusion in Grant that a racially motivated crime is a proper basis for a departure sentence.
We also disagree with the defendant that the trial court erred in allowing the prosecutor to comment about details that the defendant omitted in his statement to the police.
After being read his Miranda rights the defendant gave a taped statement which was played for the jury. Thereafter the prosecutor asked the detective who took the statement the following questions:
Q. Detective, Mr. Wray swore to tell the truth during the course of this statement?
A. Yes, he did.
Q. Did he ever tell you anything about having a bat during the course of that day?
A. No, he did not.
Q. Did he ever tell you about visiting an area of the 1500 block four or five times?
A. No.
In closing argument the prosecutor commented:
But we have a statement by Antonio Wray, and I spoke to you about that statement earlier. And there are a number of things that you should consider about Antonio Wray when you consider that statement. It is not the statement of an individual caught up in the web of events. It is the attempt, I would submit to you, of someone trying to manipulate the facts. When you listen to that statement again, Antonio Wray says on two occasions in this entire statement, which lasts nineteen, nineteen or twenty minutes, he doesn't know. He described Clark coming to get him; he describes how they were going to retaliate against some Haitian for what was done to Michael Rose; he describes how the victim walked in front of them, and how Kevin Clark attacked him. He never tells you on the statement about how he carried this weapon 
Defendant objected to the underscored comment on the ground that it was an *624 improper comment on defendant's right to remain silent. We conclude that the trial court correctly overruled the objection.
It is clear that the prosecutor's comment was only referring to facts the defendant omitted when the defendant gave his statement. Since the defendant was read his Miranda rights, he waived his right to remain silent as to his statement. The prosecutor's comment could not, therefore, have infringed on that right. Ivey v. State, 586 So.2d 1230 (Fla. 1st DCA 1991); Watson v. State, 504 So.2d 1267 (Fla. 1st DCA 1986), review denied, 506 So.2d 1043 (Fla. 1987).
Affirmed.
DELL, C.J., and STONE, J., concur.
NOTES
[1] Prior to the amendment of rule 3.701, effective April 21, 1988, Florida Rules of Criminal Procedure Re: Sentencing Guidelines, 522 So.2d 374 (Fla. 1988), "clear and convincing" reasons had been required for a departure sentence.