DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DANIEL D. LENZ,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-198

[April 25, 2018]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Elizabeth A. Metzger, Judge; L.T. Case No. 2013CF001569A.

Carey Haughwout, Public Defender, and Marcy K. Allen, Special Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Heidi L. Bettendorf, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, J.

After his first conviction was reversed due to the admission of improper evidence, Daniel Lenz, the defendant below, was retried and found guilty of crimes involving a child victim. He challenges his conviction and sentence of life imprisonment, raising numerous issues, two of which we find have merit. We agree with the defendant that the trial court erred in overruling a defense objection to the prosecutor's closing argument, which shifted the burden of proof to the defendant. We also find that the trial court erred in denying his peremptory strike of a prospective juror.

*Improper Closing Argument*

While the defendant was in jail awaiting trial, he spoke to his wife (the victim's grandmother) and their telephone conversations were recorded by jail authorities. During closing argument at trial, the prosecutor played the recording of the first phone call the defendant made to his wife, and offered the following closing argument commentary:

And sometimes silence can be deafening. And in this case in this jail call, I think his silence not to comfort her and say, hey, this is a misunderstanding, I didn't do it on purpose, I didn't have a lewd intent, something to that effect, he's silent. I can't help but wonder what has changed. Think about this. This is early on in the case, this is the first jail call. What has changed over the three years, what has changed? I'll tell you what's changed. He's had three years to think about this. He's had three years to think of his story and to explain everything away.

The prosecutor then played a portion of a recording where the defendant tells his wife he cannot talk about the case over the phone, as "[t]hat can put yourself in jeopardy." The prosecutor made the following statements in conjunction with this recorded clip:

Really? And he was innocent. Why couldn't he talk about the case? Why couldn't he get on the phone and say this is a misunderstanding, why couldn't he say I was tricked by the police, why couldn't he say PTSD kicked in, why couldn't he say all that? That wouldn't put him in jeopardy, not one bit. Not at all. He knows he's guilty, that's why he doesn't want to talk about this case.

Defense counsel objected, and argued that the statements constituted burden shifting. The trial court overruled the objection: "I mean obviously this is in evidence, but, you know, he's allowed to comment on it. I don't see how it's burden shifting. He's just pointing out that he didn't say certain things."

We are compelled to once again remind prosecutors and defendants alike that improper closing argument has no place in the lexicon of criminal court trials and is, with a nominal amount of reflection and trial preparation, easy to avoid. We once again provide a refresher. We first recognize that "[i]t is within the court's discretion to control the comments made to a jury, and a court's ruling will be sustained on review absent an abuse of discretion." *Salazar v. State*, 991 So. 2d 364, 377 (Fla. 2008) (citation omitted). A burden-shifting comment is reviewed for harmless error. *See Paul v. State*, 980 So. 2d 1282, 1283 (Fla. 4th DCA 2008). "It is well settled that due process requires the state to prove every element of a crime beyond a reasonable doubt." *Warmington v. State*, 149 So. 3d 648, 652 (Fla. 2014) (citation omitted). "For that reason, it is error for a prosecutor to make statements that

2

shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt." *Id.* (citation omitted). Thus, "the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence." *Id.* (citation omitted). "Comments on silence may also equate to burden-shifting comments[.]" *Gleason v. State,* 188 So. 3d 35, 38 (Fla. 4th DCA 2016).

The Fifth District summarized the types of comments our courts have held improperly shift the burden of proof to the defendant:

> [T]elling the jurors that if they believed the police officers instead of the defendant, then they should find the defendant guilty; informing the jurors that the defendant did not have tests performed on evidence found at the scene, such as hair and blood samples, to determine that the evidence did not come from him; commenting on the failure of the defendant to call witnesses; arguing that the defendant's request for a jury instruction regarding self defense is an admission by the defendant that he is guilty; and misadvising the jurors that they have to believe the testimony of the defendant over that of the police officers to have a reasonable doubt.
>
> What each of these examples has in common . . . is the prosecutor's invitation to convict the defendant for a specific reason other than the state's proof of the elements of the crime beyond a reasonable doubt . . . .

*Rivera v. State,* 840 So. 2d 284, 288 (Fla. 5th DCA 2003) (footnotes omitted).

Our courts have also opined that an argument emphasizing a defendant's failure to proclaim his innocence is the equivalent of a burden-shifting argument. *See Fowler v. State,* 67 So. 3d 1073, 1074 (Fla. 1st DCA 2011) (finding that trial court should have granted evidentiary hearing on defendant's post-conviction claim of ineffective assistance of counsel, which related to prosecutor's argument that defendant should have proclaimed his innocence to the police, as the argument "improperly shifted the burden of proof to the defendant"); *Sackett v. State,* 764 So. 2d 719, 722-23 (Fla. 2d DCA 2000) (finding trial court erred in allowing prosecutor to argue that defendant did not tell

3

officers investigating a domestic violence accusation that his accuser was drunk and making up allegations, as "the prosecutor's statement was the equivalent of arguing to the jury that Sackett should have proclaimed his innocence to the officers," and "[s]uch an argument improperly shifts the burden of proof").

Opinions of this court provide guidance, although we have frequently framed the issue as a comment on silence. In *Cowan v. State*, 3 So. 3d 446, 447 (Fla. 4th DCA 2009), the defendant and his codefendant were arrested and placed in a police car. The codefendant asked the defendant if he thought they had been caught for home invasion. *Id.* According to the prosecutor, the defendant's mouth moved as if he was answering the question. *Id.* But the defendant testified at trial that he was not involved in the burglary and that he did not respond to his codefendant's question. *Id.* On cross-examination, over objection, the prosecutor asked the defendant why he hadn't responded by asking the codefendant "What are you talking about, what burglary?" *Id.* In closing argument, the prosecutor told the jury that a reasonable person would have asked the codefendant, "What are you talking about?" *Id.* at 448. On appeal from his conviction, the defendant argued that the questioning and argument violated his right against self-incrimination. *Id.* This court found that any voluntary inculpatory statements the defendant made were admissible, but that the "[p]ost-arrest, custodial silence of the defendant is simply inadmissible as evidence of guilt and is not a proper subject of argument." *Id.* at 449. This court also recognized that "[t]he prosecution is not permitted to comment upon a defendant's failure to offer . . . an exculpatory statement prior to trial, since this would amount to a comment upon the defendant's right to remain silent." *Id.* at 450 (emphasis omitted) (citation omitted). We found that the questions and argument were fairly susceptible of being taken as a comment on silence, and it reversed for a new trial. *Id.* at 451.

In *Rao v. State*, 52 So. 3d 40, 42 (Fla. 4th DCA 2010), the defendant telephoned his mother and advised her of his arrest but told her there was nothing for her to say because he had never spoken "about it" to his mother. *Id.* During trial, the prosecutor pointed out that the defendant did not say to his mother, "I don't know what I'm doing here, I have no idea what I'm doing here," and he "never said he did not do it." *Id.* at 44-45. On appeal, this court found the case comparable to *Cowan,* and once again held that the prosecutor's comments "on the defendant's failure to explain his circumstances to his mother constituted an impermissible comment on silence." *Id.* at 45. However, this court found the error was not preserved and not fundamental error, and that if it had been preserved it was harmless. *Id.* at 45-46.

4

The state cites *Wray v. State*, 639 So. 2d 621 (Fla. 4th DCA 1994), and *Ivey v. State*, 586 So. 2d 1230 (Fla. 1st DCA 1991), for the proposition that the prosecutor's argument was not an impermissible comment on silence where the defendant did not exercise his right to remain silent. Those cases are patently distinguishable, as they involved 1) statements made to law enforcement after *Miranda* was waived, and 2) the prosecutor's comments on inconsistencies in a defendant's statement to police and a defendant's testimony at trial regarding the incident. *See Wray*, 639 So. 2d at 622-23; *Ivey*, 586 So. 2d at 1233-34. Here, the objection was based on the prosecutor's comments on the defendant's silence during a telephone conversation with his wife. During that phone call, the defendant did not address the substance of the allegations or offer any reason for the conduct alleged. Instead, he told his wife that he could not speak about the allegations.

In the instant case, the defense lodged a "burden-shifting" objection rather than a "comment on post-arrest silence" objection, but this court has recognized that, generally, this is a distinction without a difference. *Gleason*, 188 So. 3d at 38.

We find that the prosecutor's argument was both an impermissible comment on silence and a burden-shifting comment, with either one being egregious and obviously improper.[1]

We must point out that the first conviction in this case was reversed and also based on the admission of yet another portion of the recorded jail phone calls where the defendant and his wife discussed retaining an attorney, which we held to be a clearly improper attempt to focus the jury on another impermissible factor: the defendant's exercise of his right to counsel.[2] *See Lenz v. State*, 183 So. 3d 1239, 1241 (Fla. 4th DCA 2016).

---

[1] Even though the prosecutor had earlier made similar improper arguments without objection, those arguments do not render the challenged argument harmless. Rather, the unobjected to improper argument bolsters the defendant's position that the preserved error was harmful. *See Ruiz v. State*, 743 So. 2d 1, 7 (Fla. 1999) ("When the properly preserved comments are combined with additional acts of prosecutorial overreaching set forth below, we find that the integrity of the judicial process has been compromised and the resulting convictions and sentences irreparably tainted.").

[2] While a different judge presided over the first trial, the same individual acted as prosecutor in both the first and second trials.

We must also reverse based on the trial court's mistaken analysis related to the state's challenge of a peremptory strike of a juror by the defense. The defense sought to exercise a backstrike on T.C., a woman. The prosecutor asked for a gender-neutral reason, and defense counsel stated that the woman's juror information questionnaire provided that she was the parent of a teenager and that she coaches flag football. The prosecutor stated, "I believe that's the most disingenuous reason ever given. Flag football coach doesn't mean anything." The trial court stated that there was no evidence that T.C. works with children: "[T]he problem is . . . it could be men. I have friends who are men who play flag football." Based on this exchange, the trial court found defense counsel's proffered reason was pretextual. The court then noted that the proposed jury at that point was composed of all men, but defense counsel pointed out that there was one woman on the proposed jury.

On appeal, the defendant contends that the trial court erred in finding his proffered gender-neutral reason was pretextual. We agree.

"[T]he Equal Protection Clause prohibits discrimination in jury selection on the basis of gender[.]" *J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 146 (1994). The defendant's argument relates to the genuineness of a proffered reason for a peremptory strike—the third step of the three-step procedure that applies when a party objects to the exercise of a peremptory strike on the ground that it was made on a discriminatory basis. *See Melbourne v. State,* 679 So. 2d 759, 764 (Fla. 1996).[3] The Supreme Court of Florida has elaborated on this third step:

---

[3] In *Melbourne,* the court fashioned the following three-step procedure for addressing challenges to peremptory strikes:

> A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met (step 1), the court must ask the proponent of the strike to explain the reason for the strike.

> At this point, the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike,

*Melbourne* teaches that to assess genuineness, the trial court must consider all relevant circumstances surrounding the strike in determining whether the proffered reason for the strike is genuine. *Melbourne*, 679 So. 2d at 764 n.8. This Court explained in *Murray v. State*, 3 So. 3d 1108 (Fla. 2009), that

> [i]n determining whether or not a proffered race-neutral reason for a peremptory strike is a pretext, the court should focus on the genuineness of the race-neutral explanation as opposed to its reasonableness.
>
> In making a genuineness determination, the court may consider all relevant circumstances surrounding the strike. "Relevant circumstances may include – but are not limited to – the following: the racial make-up of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment." [*Melbourne*, 679 So. 2d at 764 n.8] (citing *State v. Slappy*, 522 So. 2d 18 (Fla. 1988)); *see also Booker v. State*, 773 So. 2d 1079, 1088 (Fla. 2000) ("[W]e provided a nonexclusive list of factors a trial court may consider in determining whether the reason given for exercising a peremptory challenge is genuine . . . ." (citing *Melbourne*, 679 So. 2d at 764 n.8)).

*Murray*, 3 So. 3d at 1120 (citations omitted).

The proper test under *Melbourne* requires the trial court's decision on the ultimate issue of pretext to turn on a judicial assessment of the credibility of the proffered reasons and the attorney or party proffering them, both of which "must be weighed in light of the circumstances of the case and the total course of the voir dire in question, as reflected in the record." *Slappy*, 522 So. 2d at 22; *see also Melbourne*, 679

_____

the explanation is not a pretext, the strike will be sustained (step 3).

*Melbourne*, 679 So. 2d at 764 (footnotes omitted).

7

So. 2d at 764; *Young v. State*, 744 So. 2d 1077, 1082 (Fla. 4th DCA 1999) ("[I]dentifying the true nature of an attorney's motive behind a peremptory strike turns primarily on an assessment of the attorney's credibility.")

*Hayes v. State*, 94 So. 3d 452, 462 (Fla. 2012) (alterations in original).

Aside from the factors recited in *Hayes*, the trial court may consider any relevant factor, including the "failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror." *State v. Slappy*, 522 So. 2d 18, 22 (Fla. 1988), *receded from on other grounds*, *Melbourne*, 679 So. 2d at 765. And "while the constitution does not require that the explanation be reasonable, reasonableness is one factor that a court may consider in assessing genuineness." *Siegel v. State*, 68 So. 3d 281, 286 (Fla. 4th DCA 2011).

In the instant case, it is not apparent from the transcript that the trial court considered the fundamentally core issue of whether defense counsel's belief that T.C. coached youth flag football and that she was a parent to a teenager was genuine. Instead, the court focused on defense counsel's failure to make sure that T.C. coached children rather than adults. The court found that defense counsel's reason was based on "an assumption" not supported by the record. But the record *did* support defense counsel's concern, as T.C. indicated that she was the parent of a teenager and coached flag football. The court's focus should have been on the genuineness of counsel's belief, not the reasonableness of an assumption. *See Wimberly v. State*, 118 So. 3d 816, 822 (Fla. 4th DCA 2012) (finding that where prospective juror indicated initially that she didn't understand the word "insanity," but later stated that she understood the term, the state was still "entitled to maintain" its genuine belief that she did not understand). Even if reasonableness was a dispositive factor, defense counsel's belief that T.C. coached youth flag football *was* a reasonable belief, given that she was the parent of a teenager and the commonly-known fact that youth sports leagues utilize coaches, many of whom are parents.

Further, the record reveals that the trial court's consideration of the relevant factor of the gender makeup of the jury was superficial. The trial court first observed that the potential jury at that point was "all males," but this observation was incorrect, as pointed out to the court by defense counsel. The court failed to consider why the group of six potential jurors was primarily male, i.e., which strikes led to the resulting jury. Specifically, the defendant was on trial for crimes against

a young child, the other women who were struck by defense counsel had young children, and defense counsel did not strike two female prospective jurors who did not have minor children or currently work with children.[4]  We find that the trial court's failure to engage in a meaningful genuineness analysis necessarily amounts to reversible error.

Based on the foregoing, we reverse and remand for a new trial.  We find the remaining issues raised by the defendant to be without merit, unpreserved, or moot.

*Reversed and remanded for new trial.*

LEVINE and KLINGENSMITH, JJ., concur.

*        *        *

**Not final until disposition of timely filed motion for rehearing.**

---

[4] The prosecutor exercised a peremptory strike on one of those women.