DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**EARL L. BOGGESS,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D18-1943

[April 10, 2019]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Joe A. Wild, Judge; L.T. Case No. 312016CF000690A.

Carey Haughwout, Public Defender, and Gary Lee Caldwell, Assistant Public Defender, West Palm Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Melynda L. Melear, Senior Assistant Attorney General, West Palm Beach, for appellee.

WEISS, DALIAH H., Associate Judge.

Earl Boggess appeals his conviction and life sentence for one count of second-degree murder with a firearm, raising four issues on appeal. First, he argues the trial court erred in prohibiting him from introducing two prior consistent statements to rebut the state's charge of recent fabrication. Second, he contends the state's closing argument contained improper burden-shifting arguments requiring reversal. We affirm as to the first and second issues for the reasons discussed below. As to the third and fourth issues, we affirm without discussion.

Boggess was charged with second-degree murder with a firearm for the shooting of his wife, Kathryn "Kathy" Boggess. The two were alone in their home when the shooting occurred. Throughout the course of the proceedings, Boggess maintained that he had accidentally shot Kathy while cleaning a revolver.

About one hour before the shooting, Boggess, Kathy, his brother-in-law, and his sister-in-law were at a bar. According to his brother-in-law,

Boggess threw an empty plate up against the bar and seemed angry or upset while he was there. At one point, another bar patron walked by and asked Kathy whether she and Boggess were still together. The brother-in-law claims that Kathy responded by saying "regrettably," which made Boggess "very upset" and visibly "angry." The sister-in-law did not recall such an exchange, nor did the bartender notice Boggess looking angry. Boggess denied having any issues with Kathy at the bar and said Kathy never told the other patron that they were "regrettably" still together.

Boggess and Kathy then returned home. According to Boggess, Kathy had wanted to go shooting the next day, so he went to prepare their guns while she cooked dinner. He took two guns—a revolver and a semiautomatic pistol—from his gun safe and laid them on the kitchen's island counter.

Boggess explained that he had been taught to keep his guns on what was referred to at trial as "cowboy safety." This method involved leaving just one of the revolver's cylinders empty and leaving the gun on the empty cylinder to ensure it did not accidentally fire a live round. Boggess claimed that as he prepared to clean the revolver, he pulled the hammer back and, to his surprise, noticed the gun was on a live round instead of an empty cylinder.

He testified that, upon hearing his surprised reaction, Kathy walked over from the stove to the opposite side of the island counter and grabbed ahold of his hand and the body of the gun. Boggess offered:

> And I can't pull down with the gun because the counter's in my way. I can't go right or left because her hands are holding it, so I started going up. I can't pull it back. It'd be stupid to pull it back; I'm still pointing at her. So I started pulling the gun up and I was hollering at her and I was telling her, let go, you know, Kathy. And the gun went off. We stood there, both of us, just looked at each other for a second. Then she reached for me. I was reaching for her. She fell to the floor.

Boggess then called 911.

Boggess's recorded 911 call was played into the record at trial. The call began with him saying, "Why'd you make me do this, Kathy?" After notifying the dispatcher of the shooting and providing his address, Boggess placed the phone down with the dispatcher still on the line. In the background, he can be heard slapping something and asking Kathy to talk

to him.  He then said, "No respect," and "You fucked with the wrong man, bitch."

When police arrived, Boggess refused their orders to drop the revolver. At several points during his standoff with police, Boggess told the officers to get help for his wife.  He confessed to the officers he had "fucked up" and shot his wife.  He also repeatedly asked the police to shoot him.  He told them they "don't even want to know" what happened and asked them if they had a report to fill out.

One of the officers described Boggess as being "indifferent, but direct" during the encounter.  Another described him as "obstinate" and "matter of fact."  Eventually, Boggess sat down at the patio table, began smoking a cigarette, and raised the revolver to his head.  Seeing this, an officer fired a beanbag round that knocked the gun out of Boggess's hand and caused him to fall to the ground.  The officers then arrested Boggess.  One of the arresting officers noted that Boggess smelled strongly of alcohol.

Boggess's defense at trial was that the shooting was accidental.  He offered explanations for several of his initial statements on the date of the shooting.  He testified that he referred to his wife as a "bitch" on the 911 call in an affectionate manner, explaining that her nickname for him was "asshole," intimating this is how they referred to one another at home and that these were just nicknames.  He went on to explain the statement of "you fucked with the wrong man, bitch" as him referring to his wife as accident-prone and said that he felt apologetic towards her and "wasn't himself" when he made the statements.

Boggess then explained that Kathy grabbed his hand and the gun and that he was trying to get it away from her.  The state had questioned its forensic witnesses about where one would expect to find stippling if Kathy had been holding the body of the gun when it went off.  Specifically, the state argued that Boggess changed his testimony based on the forensic witnesses' testimony about stippling.  In a later demonstration, Boggess said he did not recall whether Kathy had reached for the gun or his hand, but that she tried to pull up his wrist to look at the gun.

While cross-examining Boggess, the state highlighted that Boggess sat through the trial and had the opportunity to listen to all of the witnesses' testimony.  The state argued that Boggess changed his testimony after listening to his lawyer's opening statements and the testimony of the state's witnesses.  The state also pointed out that Boggess never referred to the shooting as an accident in his 911 call.  Boggess testified that, while

he was unsure whether he actually used the word "accident" on the 911 call, he did tell the officers several times that the shooting was an accident.

On redirect examination, the defense sought to introduce three prior statements of Boggess where he referred to the shooting as an accident. Boggess argued the statements were admissible to rebut the state's charge of recent fabrication characterizing the shooting as an "accident." The trial court permitted the first statement and prohibited the other two. The first statement was made to police during a post-arrest interview the day of the shooting. The second statement was an undated letter from Boggess to his family where he referred to the shooting as an "awful accident." The third statement was made to Boggess's son during a jail visit *after* Kathy's funeral. The parties do not dispute that the last two occurred well after the day of shooting.

The standard of review for a lower court's ruling on the admission or exclusion of evidence is abuse of discretion, and that discretion is limited by the rules of evidence. *Alexander v. State*, 103 So. 3d 953, 954 (Fla. 4th DCA 2012). The admission of prior consistent statements is within the sound discretion of the court. *See Jenkins v. State*, 547 So. 2d 1017, 1020 (Fla. 1st DCA 1989).

Under the Florida rules of evidence, a statement may be admitted as non-hearsay if the declarant testifies at trial and is subject to cross-examination concerning the statement and the statement is "[c]onsistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of improper influence, motive, or *recent fabrication.*" § 90.801(2)(b), Fla. Stat. (2016) (emphasis added); *see also Chandler v. State*, 702 So. 2d 186, 197-98 (Fla. 1997).

Clearly, in this case, the state suggested that Boggess fabricated his trial testimony. The state argued that Boggess did not use the word "accident" on the date of the shooting and arrest. Specifically, the state asked: "Now, the entire time that the police are at you[r] residence while you were sitting on the back porch, drinking beer, did you ever tell any of the officers this was a horrible, terrible accident?" The prosecutor went on to ask whether Boggess mentioned the word "accident" to various police officers who responded to the shooting on the same day.

The first statement was made on the same date as the shooting in a post-arrest interview. Boggess stated during this interview that the shooting was an accident. The trial court was well within its bounds in admitting this statement, as what the prosecutor raised on cross-examination went directly to Boggess's interactions with the police on the

date of the shooting. This statement was consistent with Boggess's testimony at trial and was properly offered to rebut the charge that he fabricated his accidental shooting theory after sitting through trial listening to all of the other witnesses' testimony. *See* § 90.801(2)(b), Fla. Stat.

The statements made in Boggess's letter and statements made to his son during a jail visit were made significantly after the date of the shooting, allowing more time for reflection, as noted by the trial court. The trial court found that these statements went beyond events of the date in question and were therefore not relevant to what was very specifically raised by the prosecution on cross-examination. The state pointed out in its arguments to the trial court that it limited its cross-examination to Boggess's characterization of the shooting as an accident on the 911 call and his statements to police that day. These later two statements could have resulted from Boggess having time to develop a motive to fabricate. While the exact dates of the jail visit by the son and the letter are not known, it is clear these statements were made well after the date of the shooting and initial investigation. The trial court correctly exercised its discretion in excluding both the statements in the letter and the statements from Boggess's jail visit with his son. *See* § 90.801(2)(b), Fla. Stat.

During closing arguments, the state made three remarks at issue in this appeal. Boggess argues that based on the state's repeated comments that he "couldn't prove" his theory of innocence, he was in essence deprived of a fair trial, as the state improperly shifted the burden of proof to the defense. We outline the remarks below.

"**In the beginning, you heard that the stippling on her hand, on the back of her right hand was created by the cylinder gap [between the barrel of the gun and the cylinder], but I guess that's no longer the case. But also remember this. It's not good enough just to say this is an accident. Not good enough**."

The defense objected to this comment on the grounds of burden shifting, and the court overruled the objection.

"**Remember the law. There's that element in excusable homicide that does have the word accident in there. But it's not just sufficient to prove, and they haven't in this case and not, and they won't, but they can't just prove an accident. The other elements of that crime also have to fit in order to find that excusable homicide applies. Then**

**remember, the key phrase that was in there was usual ordinary care. And they can't just, they can't, just can't prove that**."

The defense again objected to burden shifting. In response, the trial court, with agreement of defense counsel, gave a curative instruction: "Just, just to clear up going back and forth, it's the State's burden to prove the case beyond a reasonable doubt. So just, that's what we're talking about."

"**No respect. The victim in this case, Kathy Boggess, by all accounts from this case, she was a sweet person. And there were some allegations about who made it happen. She didn't make this happen. It wasn't her. It was all him. Kathy was a great cook. She was sweet. And she might have been fast too. But she wasn't that fast. When you pull the trigger, that instantaneously goes off. When she grabbed, when he says he grabbed her hand and pulled on there, they're desperately trying to get that hand now away from that gun, but they can't do it**."

The defense objected again that the state improperly shifted the burden, and the court overruled the objection.

This court reviews a trial court's ruling on prosecutorial closing comments for an abuse of discretion. *Pierre v. State*, 88 So. 3d 354, 355 (Fla. 4th DCA 2012). In deciding whether to reverse for improper closing comments, the court "examines the totality of the errors in the closing argument and determines whether the cumulative effect of the numerous improprieties" deprived the defendant of a fair hearing. *Card v. State*, 803 So. 2d 613, 622 (Fla. 2001). Improper burden-shifting comments are also subject to harmless error review. *Lenz v. State*, 245 So. 3d 795, 797-98 (Fla. 4th DCA 2018).

"[I]t is error for a prosecutor to make statements that shift the burden of proof and invite the jury to convict the defendant for some reason other than that the State has proved its case beyond a reasonable doubt." *Gore v. State*, 719 So. 2d 1197, 1200 (Fla. 1998). The state *is* permitted, however, to "lawfully respond that the defense argument is not what the evidence shows . . . ." *Austin v. State*, 700 So. 2d 1233, 1235 (Fla 4th DCA 1997). Similarly, the prosecution may argue that "based on the evidence of the case, [the jury] should question the plausibility of the defense's theory of the case[.]" *Valentine v. State*, 98 So. 3d 44, 56 (Fla. 2012).

This court reviews all three statements in the context in which the statements were made. *Merck v. State*, 975 So. 2d 1054, 1062 (Fla. 2007).

6

The comments, when taken in context, were an explanation of the lack of evidence supporting Boggess's theory of defense. *See Austin*, 700 So. 2d at 1235. The statements were permissible attacks by the prosecution on the defense's "accident" theory, reminding the jury that just saying the shooting was an accident did not amount to a valid defense. All three comments permissibly highlighted the state's position that this shooting was no accident and that the defense's evidence did not support its arguments.

The second remark was confusing and inaccurate in that the state repeatedly used the word "prove" when referring to the defense case. However, upon objection, the trial court gave a curative instruction with the consent of defense counsel, thereby curing any potential for confusion or error. This court has previously found that an immediate curative instruction on the burden of proof may be sufficient to clarify an issue at bar and remove any confusion. *Thomas v. State*, 726 So. 2d 369, 372 (Fla. 4th DCA 1999).

Based on the trial court's curative instruction, the comments taken in context, and the record as a whole, we find that the remarks were not improper. Furthermore, any error would be harmless. *See Lenz*, 245 So. 3d at 797-98.

Therefore, we affirm all issues.

*Affirmed.*

WARNER and GROSS, JJ., concur.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**