281 So.2d 368 (1973)
Leola CRUM, Appellant,
v.
STATE of Florida, Appellee.
No. 72-409.
District Court of Appeal of Florida, Second District.
August 15, 1973.
Robert E. Jagger, Public Defender, and Karl B. Grube, Asst. Public Defender, Clearwater, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and David Luther Woodward, Asst. Atty. Gen., Tampa, for appellee.
HOBSON, Judge.
Appellant, Leola Crum, was tried with her two co-defendants, Brenda Martin and Mary Josey, for the crime of breaking and entering a dwelling house with intent to commit the felony of grand larceny. At trial the court found that the State had failed to prove the requisite amount necessary to establish a prima facie showing of intent to commit grand larceny and, therefore, submitted the case to the jury on the lesser included offense of breaking and entering with intent to commit a misdemeanor. The jury returned verdicts of guilty on the lesser offense as to all defendants and upon being adjudged guilty and sentenced, Leola Crum, after denial of her motion for new trial, takes this appeal.
Crum raises two points in her appeal: 1) that the trial court erred in admitting her exculpatory statement given to Officer Lynn prior to having her "Miranda" rights explained to her; and 2) the trial court erred in admitting into evidence the exculpatory statements given by the co-defendants Martin and Josey, this being contra to the holding in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476.
*369 The facts material to the points involved are not in dispute and may be summarized as follows:
At approximately twelve noon on December 9, 1971, while on duty, Officer Lynn observed Crum, Martin and Josey attempting to move a console color television set across a vacant lot covered with sandburs. Due to the suspicious nature of the circumstances, and having had prior experience with the three defendants in which they had run afoul of the law, Officer Lynn confronted the three to investigate the matter. Upon initial questioning Martin volunteered that the T-V belonged to her mother who lived close by. At this point Officer Lynn accompanied Martin to her mother's house and ascertained that the T-V did not belong to Martin's mother. Thereupon Officer Lynn returned to the vacant lot and radioed for backup units. Crum started to walk away, at which time another officer called to her to come back and straighten the matter out. Crum returned and told Officer Lynn that the T-V had come from a local merchant and was being transported to her boy friend's house. Josey then related to Officer Lynn yet a third inconsistent exculpatory explanation. At this point the police officers left the scene and Crum, Martin and Josey went about their business. Later that afternoon Robert and Susan Smith, upon returning home from work, discovered that their console color T-V had been tampered with and moved from its location in their apartment. At some point of time between the confrontation by the police officers and the Smiths returning home, Martin and Josey, along with the T-V set, were picked up by a taxi which delivered them and the T-V set to the Smith's residence.
At the trial Crum objected to the introduction of her exculpatory statement given Officer Lynn under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In Miranda, supra, it was held:
"... [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."
The determination of the first question before us rests upon whether or not under the facts of this case Crum was deprived of her freedom of action in any significant way. In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court, when considering the nature and extent of the governmental interests involved in police investigations, stated:
"... One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."
We must now determine whether or not the facts of the instant case come within the appropriate circumstances and appropriate manner of legitimate investigation as proscribed by Terry. The actions of the three defendants as observed by Officer Lynn were highly suspicious. Upon initial investigation Martin volunteered that the T-V set belonged to her mother who lived nearby. Officer Lynn immediately checked with Martin's mother and found this not to be true. Upon returning to the scene Officer Lynn, after another officer had asked Crum to come back and straighten out the matter, asked for Crum's explanation, which she gave.
In Terry, supra, Mr. Justice Harlan in a special concurring opinion, after unreservedly *370 agreeing with the majority opinion, was constrained to fill in a few gaps as he saw them. His reason for doing this was because the opinion would serve as initial guidelines for law enforcement authorities and courts throughout the land. Justice Harlan held that under justifiable suspicion a police officer is afforded a proper constitutional basis for stopping a person, "restraining his liberty of movement briefly, and addressing questions to him." Mr. Justice White, concurring specially in Terry, supra, stated: "However, given the proper circumstances ... it seems to me the person may be briefly detained against his will while pertinent questions are directed to him." Justice White observed that a person having been stopped is not obliged to answer questions, and answers may not be compelled.
In the instant case, after Martin's explanation was determined to be untrue, Crum was in fact detained and pertinent questions directed to her. It was at this time that Crum gave the exculpatory statement which was admitted in evidence against her.
We hold that the facts of this case conform to the appropriate circumstances and the appropriate manner as laid down in Terry, supra, and were admissible as not being violative of the rule against self-incrimination as laid down in Miranda, supra.
As to the second question involved, the statements of Martin and Josey, as well as that of Crum, were all exculpatory and not inculpatory as they were in Bruton, supra. In Bruton the United States Supreme Court held that an inculpatory statement of a co-defendant who did not testify was not admissible as a violation of the other co-defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment. The Confrontation Clause of the Sixth Amendment guarantees an accused in a criminal case the right to confront the witnesses against him.
The statements of the co-defendants Martin and Josey which were introduced in this case were exculpatory and therefore cannot be said to be statements of witnesses against Crum. This being the case, Crum's right under the Confrontation Clause of the Sixth Amendment to confront the witnesses against her was not violated and the trial court did not err in admitting the exculpatory statements of Martin and Josey.
The judgment and sentence appealed is hereby
Affirmed.
LILES, A.C.J., and McNULTY, J., concur.