689 So.2d 383 (1997)
Ronnie HOGGINS, Appellant,
v.
STATE of Florida, Appellee.
No. 95-1154.
District Court of Appeal of Florida, Fourth District.
February 26, 1997.
Richard L. Jorandby, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, Judge.
The issue involved in this appeal is whether a prosecutor may elicit and comment on a defendant's custodial pre-Miranda[1] *384 silence as impeachment when the defendant testifies in his defense.[2] We hold that the prosecutor may not and reverse.
This case arises from the armed robbery of a convenience store. The state's evidence showed that in the late evening of September 10, 1993, appellant reported to the police that his bike had been stolen. Later that evening appellant robbed a store where the two victims were working. During the course of the robbery, appellant pointed a gun at both victims and threatened to kill them if they didn't give him the money. He left with the cash register drawer and a cigar box containing lotto tickets. On his way out, he fired two shots at one of the victims. Around 12:30 a.m., the police observed appellant riding a bike with a cash register drawer and a cigar box. When the police put on their lights and sirens, appellant crashed his bike, picked up the drawer and box, and ran into an apartment complex. He was pursued by the police. They began a search of the area and followed a trail of lotto tickets and food stamps which led to an apartment rented by the mother of appellant's child. Consent was given to search the apartment; the police found appellant in an upstairs bedroom; they also found the cash drawer and cigar box. Appellant was handcuffed and brought downstairs, where the police had brought one of the victims to identify appellant. Appellant was then arrested but was not read his Miranda rights until he was placed in the patrol car.
In his own defense, appellant testified that he was visiting his child at the apartment. He stated that his bike was stolen off the porch, which he had reported to the police that night. Later, while he was sitting on the front step, he observed someone running through the complex who appeared to hide something in the playground area. The person fled, and appellant investigated. He found the cash drawer and cigar box and took them back to the apartment where he hid them in the attic. He then laid down in an upstairs bedroom. He denied going to the store and robbing it.
On cross-examination, the prosecutor was allowed to ask appellant why he had never told the police his story when they came to the apartment on the night of the robbery. Objection to this impeachment was overruled based on Rodriguez v. State, 619 So.2d 1031 (Fla. 3d DCA 1993). Rodriguez held that impeachment of a defendant's credibility with defendant's pre-Miranda silence is proper, relying on Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), and Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). In closing argument the prosecutor also commented extensively on appellant's failure to give his explanation at the scene. The jury convicted appellant and he then filed this appeal.
The Supreme Court addressed the use of silence as impeachment after the giving of Miranda warnings in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). There, it held that the impeachment use of a defendant's silence after Miranda warnings have been given violates due process, as it is fundamentally unfair to implicitly assure the defendant that his silence will not be used against him and then to use his silence to impeach his subsequent explanation. This was followed by Jenkins, where the Supreme Court held that the use of a defendant's pre-arrest silence to impeach the defendant's credibility when the defendant testifies does not violate the Constitution. Subsequently, in Fletcher v. Weir, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Court held that the Constitution does not prohibit the use for impeachment purposes of a defendant's silence even after arrest if no Miranda warnings have been given. The Court later noted that such silence "does not rest on any implied assurance by law enforcement authorities that it will carry no penalty." Brecht, 507 U.S. at 628, 113 S.Ct. at 1716.
In Jenkins and Weir, while determining that impeachment with the defendant's pre-Miranda *385 silence violated no federal constitutional standard, the Court left open the possibility that states could formulate their own evidentiary rules defining when silence is viewed as more probative than prejudicial. Jenkins, 447 U.S. at 240-41, 100 S.Ct. at 2130-31; Weir, 455 U.S. at 607, 102 S.Ct. at 1312. Many states have used their own evidentiary analysis to condemn the use of pre-Miranda silence as impeachment.[3] Other states have relied upon their state constitutional provisions to do so.[4] Some, however, have followed the Supreme Court and approved the use of impeachment as to pre-Miranda silence.[5] The Jenkins/Weir cases have received considerable criticism from commentators as well.[6] To determine whether comment on pre-Miranda silence is permissible impeachment, we look to both the Florida Constitution and our evidentiary rules.

State Constitutional Basis
Article I, section 9 of the Florida Constitution provides:
No person shall be deprived of life, liberty or property without due process of law, or be twice put in jeopardy for the same offense, or be compelled in any criminal matter to be a witness against himself.
In Traylor v. State, 596 So.2d 957, 961 (Fla. 1992), the court recognized that under our federalist system of government, state constitutions may place more rigorous restraints on governmental conduct than what the federal Constitution imposes; however, states cannot place more restrictions on fundamental rights than the federal Constitution permits. Thus, the court held that Florida courts:
are bound under federalist principles to give primacy to our state Constitution and to give independent legal import to every phrase and clause contained therein. We are similarly bound under our Declaration of Rights to construe each provision freely in order to achieve the primary goal of individual freedom and autonomy.
Id. at 962-63 (footnote omitted).
We analyze appellant's claim under our state due process provision. With respect to impeachment by disclosure of silence, the supreme court said in Willinsky v. State, 360 So.2d 760, 762 (Fla.1978):
Impeachment by disclosure of the legitimate exercise of the right to silence is a denial of due process. It should not be material at what stage the accused was silent so long as the right to silence is protected at that stage. The language in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), although set in the context of silence at arrest, reflects a general policy.
*386 While the Willinsky court dealt with silence at a preliminary hearing, in Webb v. State, 347 So.2d 1054 (Fla. 4th DCA 1977), we applied the same type of analysis to a situation factually similar to the instant case. Webb testified on his own behalf to an alibi and on cross-examination the prosecutor was allowed to ask why Webb had not told the police about the alibi on his arrest. Because the record did not reveal whether Miranda rights had been read, the state argued that the prosecutor was free to comment on pre-Miranda silence. To that contention, our court stated:
[W]e note that, while Miranda warnings make it even more offensive to use a person's silence upon arrest against him, the absence of such warnings does not add to nor detract from an individual's Fifth Amendment right to remain silent.... If it were otherwise, an ignorant defendant who was advised of his right to remain silent would be protected against use of his silence to impeach him at trial; but an educated, sophisticated defendant familiar with his right to remain silent who was not apprised of that right by the police would be subject to impeachment for the exercise of a known constitutionally protected right.
Id. at 1056. The court also cited to Weiss v. State, 341 So.2d 528 (Fla. 3d DCA 1977), in which the prosecutor commented on the appellant's failure to come forward to explain himself prior to his arrest when he knew he was under investigation. Weiss held that this too was a violation of the Fifth Amendment privilege. The analysis of Webb is consistent with the due process concerns of Willinsky.[7] Furthermore, in Lee v. State, 422 So.2d 928 (Fla. 3d DCA 1982), decided after Weir and Jenkins, the court applied Webb and Willinsky and determined that the right to remain silent is entitled to more protection under our state constitution than is permitted under the federal Constitution.
By prohibiting impeachment of a testifying defendant with custodial silence, all defendants are treated the same regardless of when Miranda warnings are administered. In this case, for instance, the officers did not administer the warnings to the appellant until after handcuffing him, formally placing him under arrest, and placing him in the police car for transport. If they had read him his rights when they placed him in custody in the bedroom, then none of his subsequent silence would be admissible under Doyle.[8] There must be concern that a rule allowing impeachment as to pre-Miranda silence but not as to post-Miranda silence may result in the police postponing unnecessarily the giving of the warnings, so that silence can be effectively used as impeachment if the defendant testifies.
Because we first look to our state constitution, we follow Webb and hold that the use of custodial pre-Miranda silence violates the due process protections contained in the Florida Constitution. While Rodriguez was decided on federal Fifth Amendment grounds, its citation to Jenkins and Brecht, without consideration of the state constitutional grounds, leaves our districts with different rules regarding the protection of constitutional rights. Even if our decision here does not directly conflict with Rodriguez,[9] we think that this is a question of great public importance whose interpretation should be uniform throughout the state. We therefore certify the following question:

*387 DOES FLORIDA CONSTITUTION, ARTICLE I, SECTION 9, PREVENT THE IMPEACHMENT OF A TESTIFYING DEFENDANT WITH THE DISCLOSURE OF A DEFENDANT'S PRE-MIRANDA SILENCE WHILE IN CUSTODY?

Evidentiary Basis
The Supreme Court also left open the possibility that state evidentiary rules may preclude the admission of a defendant's silence as impeachment. Indeed, the decision in Webb was also based on the determination that the silence of the defendant was not actually inconsistent with the defendant's trial testimony. Webb, 347 So.2d at 1056. In Weiss, the court held that, in addition to the constitutional violation, the prejudicial effect of the evidence of silence for impeachment purposes outweighed its probative value. Weiss, 341 So.2d at 530.
The United States Supreme Court used an evidentiary approach in holding that a trial court erred in allowing the prosecutor to cross-examine the defendant regarding a prior invocation of his Fifth Amendment rights. Grunewald v. United States, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957). It noted that where the evidentiary matter had such serious constitutional overtones, the dangers of the impermissible use of such evidence outweighed any probative value it might have. Grunewald, 353 U.S. at 423-24, 77 S.Ct. at 983-84; see also United States v. Hale, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975) (a pre-Doyle case applying evidentiary analysis to post-Miranda silence; noting that government must establish threshold inconsistency between silence and later exculpatory testimony at trial).
There are many reasons why a person may not speak when taken into custody by police. First, the situation is full of intimidation, which may render anyone mute. The person may be in such fear or confusion that even an innocent person may not know what to say. Or, the person may know about his rights and his silence is an assertion of them, even without receipt of Miranda warnings.
In the instant case, the appellant was taken from his bed, handcuffed, and led downstairs to face one of the victims of the robbery. The testimony reveals that it was a very tense and explosive situation, with the victim yelling and threatening the appellant. In this chaotic atmosphere, his silence as to his explanation of the events of the evening is not inconsistent with the subsequent explanation he gave. On an evidentiary basis, we also hold, consistent with Webb, that the exculpatory statement was not inconsistent with appellant's prior silence. Therefore, such silence was inadmissible as impeachment.
The prosecutor also made two comments on appellant's post-Miranda silence. In rebuttal closing argument, the prosecutor argued:
He gave this statement under oath, but never anytime previous to today did he ever say this story to the police about how he came across this money and stuff.

The prosecutor then argued:
Having been advised of his constitutional right he never mentioned one time this story he has said here today.
Both of these comments were as to appellant's post-Miranda silence and were therefore impermissible. See Doyle, 426 U.S. at 617-19, 96 S.Ct. at 2244-45; accord Spivey v. State, 529 So.2d 1088, 1092 (Fla.1988); State v. Burwick, 442 So.2d 944, 948 (Fla.1983).
The errors in admitting impeachment as to pre-Miranda and post-Miranda silence and comment thereon are subject to a harmless error analysis. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The prosecutor spent a lot of time in cross-examination of appellant on his pre-Miranda silence while in custody and then emphasized it in closing argument. The evidence against the appellant was strong with the victim's identification of appellant. But the victim testified that the robber used a t-shirt to cover his face during the robbery, and he also testified that the robber had a wine glass or liquor sign as a tattoo, when appellant had a tattoo of a bull. The mother of appellant's child corroborated parts of appellant's version of events. As the supreme court noted in DiGuilio, "[i]t is clear that comments on silence are high risk errors because there is a substantial *388 likelihood that meaningful comments will vitiate the right to a fair trial by influencing the jury verdict...." Id. at 1136-37. Under these circumstances, we cannot conclude beyond a reasonable doubt that the impeachment as to the appellant's silence and the comments thereon did not affect the jury's verdict. See id. at 1138-39.
The case is reversed and remanded for a new trial.
GLICKSTEIN, J., concurs.
POLEN, J., dissents with opinion.
POLEN, Judge, dissenting.
I would affirm appellant's conviction, as I believe Rodriguez v. State, 619 So.2d 1031 (Fla. 3d DCA), rev. denied, 629 So.2d 135 (Fla.1993), should be followed to allow impeachment based on pre-Miranda silence. I agree with the certified question as being of great public importance.
Were the majority inclined to affirm the conviction, I believe we would agree that appellant's Habitual Violent Felony Offender Sentence for a life felony would require reversal in any event. Lamont v. State, 610 So.2d 435 (Fla.1992); Newberry v. State, 616 So.2d 1093 (Fla. 4th DCA 1993). Because the majority reverses for a new trial, it was unnecessary for them to reach the sentencing issue.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] In this case, we are called upon to decide only whether such impeachment is permissible as to a defendant's pre-Miranda silence when the defendant is in a custodial situation. We therefore do not reach the issue of impeachment as to a defendant's pre-Miranda silence when a defendant is not in a custodial situation.
[3] Some states make an evidentiary determination on a case-by-case basis. E.g., Silvernail v. State, 777 P.2d 1169 (Alaska.Ct.App.1989); State v. Antwine, 743 S.W.2d 51 (Mo.1987); People v. DeGeorge, 73 N.Y.2d 614, 543 N.Y.S.2d 11, 541 N.E.2d 11 (1989). Others have ruled that impeachment as to custodial pre-Miranda silence is inadmissible based on their rules of evidence. E.g., State v. Leecan, 198 Conn. 517, 504 A.2d 480 (1986); Mallory v. State, 261 Ga. 625, 409 S.E.2d 839 (1991); Wills v. State, 82 Md.App. 669, 573 A.2d 80 (1990). In addition, there are states that have precluded impeachment as to pre-Miranda silence on both evidentiary and constitutional grounds. E.g., Coleman v. State, 111 Nev. 657, 895 P.2d 653 (1995); Commonwealth v. Turner, 499 Pa. 579, 454 A.2d 537 (1982), holding limited in part by Commonwealth v. Bolus, 545 Pa. 103, 680 A.2d 839 (1996); Sanchez v. State, 707 S.W.2d 575 (Tex.Crim.App.1986).
[4] E.g., State v. Davis, 38 Wash.App. 600, 686 P.2d 1143 (1984); Clenin v. State, 573 P.2d 844 (Wyo.1978), reaffirmed by Tortolito v. State, 901 P.2d 387 (Wyo.1995); see also Coleman, 895 P.2d at 653 (relying on both evidentiary and constitutional grounds); Sanchez, 707 S.W.2d at 575 (same).
[5] E.g., People v. Delgado, 10 Cal.App.4th 1837, 13 Cal.Rptr.2d 703 (1992); State v. Finley, 276 Mont. 126, 915 P.2d 208 (1996); State v. Sorenson, 143 Wis.2d 226, 421 N.W.2d 77 (1988).
[6] See Barbara Rook Snyder, A Due Process Analysis of the Impeachment Use of Silence in Criminal Trials, 29 Wm. & Mary L.Rev. 285, 323-35, 333-35 (1988); Richard K. Sherwin, Dialects and Dominance: A Study of Rhetorical Fields in the Law of Confessions, 136 U. Pa. L.Rev. 729, 820 (1988). But see David E. Melson, Comment, Fourteenth Amendment Criminal Procedure: The Impeachment Use of Post-Arrest Silence Which Precedes the Receipt of Miranda Warnings, 73 J.Crim. L. & Criminology 1572 (1983).
[7] This use of due process theory was extensively reviewed in Professor Snyder's article. See supra note 6. Professor Snyder advocates the same considerations as this court noted in Webb.
[8] We note that the Supreme Court in Doyle anticipated the giving of Miranda warnings immediately upon arrest:

The warnings mandated by [Miranda] require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.
Doyle, 426 U.S. at 617, 96 S.Ct. at 2244-45 (emphases supplied; footnotes and citations omitted).
[9] The facts of Rodriguez also differ in that it appears that Rodriguez's silence may have occurred prior to custody. However, statements in Rodriguez could be read to permit impeachment as to all pre-Miranda silence.