716 So.2d 803 (1998)
Michael CHARTON, Appellant,
v.
STATE of Florida, Appellee.
No. 96-3317.
District Court of Appeal of Florida, Fourth District.
July 15, 1998.
*804 Richard L. Jorandby, Public Defender, and Susan D. Cline, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Ettie Feistmann, Assistant Attorney General, West Palm Beach, for appellee.
STEVENSON, Judge.
The issue in this case is whether the prosecution may comment, during its case-in-chief, on a defendant's silence during a lawful investigative Terry stop. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The resolution of the main issue in this case depends upon whether the Fifth Amendment protects an individual's Terry stop silence. As various Florida decisions have previously suggested, we now emphasize that such silence is constitutionally protected. Accordingly, we reverse appellant's conviction for resisting an officer with violence following a trial in which the prosecution was permitted, over repeated objections, to comment on silence during a Terry stop.

Facts
The prosecution's only witness, Officer Gary McVey, was riding in an unmarked police car when he came upon appellant at approximately 2:30 a.m., behind a closed, strip shopping mall under highly suspicious circumstances. What followed was a series of attempted questionings, pat-downs and brief break-aways and then an attempted arrest for loitering and prowling, all of which culminated in a physical altercation and appellant's arrest. Although the trial court found that the interaction in this case was a consensual "citizen encounter," we conclude that it was actually an investigative stop. The encounter in this case became a nonconsensual investigative stop when Officer McVey physically prevented appellant from riding away on his bicycle. See T.J. v. State, 452 So.2d 107, 108 (Fla. 3d DCA 1984). We find, however, that this "stop" was lawfully predicated upon a founded suspicion that appellant was involved in some form of criminal activity. See State v. Russell, 659 So.2d 465, 467 (Fla. 3d DCA 1995); In re M.C., 641 So.2d 502 (Fla. 4th DCA 1994).
Appellant was ultimately charged only with resisting an officer with violence. The jury convicted appellant as charged. At trial, the prosecutor, in both his opening statement and closing argument, made various comments, which are challenged on this appeal, concerning appellant's silence and failure to explain to Officer McVey, during the stop, "what he was doing in the area." Appellant objected on the basis that the State was commenting on his right to remain silent. The trial court overruled these objections.

The loitering and prowling cases
Appellant correctly relies on State v. Ecker, 311 So.2d 104 (Fla.1975), and Smith v. State, 695 So.2d 864 (Fla. 4th DCA 1997), in arguing that the prosecution could not lawfully comment on his refusal to explain his presence and conduct to the police officer.
In Ecker, while addressing the constitutionality of the loitering and prowling statute, see section 856.021, Florida Statutes (1973), the supreme court discussed the statute's requirement that the defendant "identify himself and explain his presence and conduct" to an officer. Under the caption "self-incrimination," the court wrote:
We recognize that a defendant cannot be required to "explain his presence and conduct," this being constitutionally prohibited.
Id. at 110. In Smith, this court, relying on Ecker, reversed a conviction for loitering and prowling where the prosecutor commented at trial on the defendant's failure to explain his presence under suspicious circumstances:
Since a defendant cannot be required to explain his presence and conduct, it would logically follow that repeated references to a defendant's failure to do so ... would constitute error.
695 So.2d at 865.
In overruling appellant's objections that the prosecution was commenting on his silence, the trial court consistently reasoned that, "[a]t the time the officer confronted him *805 there were no Miranda[[1]] rights required." We write to clarify that while Miranda warnings are generally not required prior to Terry stop questioning,[2] a Terry-stop detainee's silence is constitutionally protected nonetheless.

Applying Miranda

In Miranda v. Arizona, 384 U.S. 436, 467, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court catalogued contemporary techniques of police "custodial interrogation" and held that, in order to protect the privilege against self-incrimination, the suspect must be specifically told of the privilege prior to such coercive questioning. In reaching this familiar holding, the Court first described the purposes of the privilege against self-incrimination:
To maintain a "fair state-individual balance," to require the government "to shoulder the entire load," 8 Wigmore, Evidence 317 (McNaughton rev.1961), to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth. Chambers v. State of Florida, 309 U.S. 227, 235-238, 60 S.Ct. 472, 84 L.Ed. 716, 721, 722 (1940). In sum, the privilege is fulfilled only when the person is guaranteed the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will." Malloy v. Hogan, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653, 659 (1964).
Id. at 460, 86 S.Ct. 1602.
It is the subtle coercion inherent in custodial interrogation that triggers the necessity of advising an individual of the right to remain silent. But the absence of the need for Miranda warnings does not necessarily mean that no right to silence exists. For instance, in Weiss v. State, 341 So.2d 528 (Fla. 3d DCA 1977), the court held that it was improper for the prosecution, in its case-in-chief, to put on evidence of the defendant's failure to come forward to explain himself prior to his arrest when he knew he was under investigation. In Weiss, the defendant was a police officer who was charged with beating a man while he was off duty and employed as a part-time security guard. Prior to the defendant's arrest, the case was under investigation by the internal affairs division of the Miami Police Department. During closing argument, the prosecutor stated: "[The defendant/police officer] never bothered to come up and say, `I understand you are investigating me. Here is how it happened....'" In finding this argument improper, the court recognized that
[i]n ... refusing to ... offer any explanation to ... the Internal Security Division prior to his arrest, appellant was simply availing himself of his constitutional guarantee of freedom from self-incrimination. U.S. Const. Amends. V, XIV.
Id. at 530.[3]

Application
Initially, we find that the comments and testimony describing no more than appellant's flight were admissible. See Jackson v. State, 522 So.2d 802, 807 (Fla.1988)(holding that testimony describing the defendant's demeanor was not a comment on silence). Similarly, the prosecution's comments revealing appellant's refusal to provide identification were legitimate. See Harper v. State, 532 So.2d 1091, 1094 (Fla. 3d DCA 1988)(holding that a request, even a persistent or intrusive one, that a detained suspect produce identification papers is an appropriate and authorized aspect of a Terry seizure). *806 Nonetheless, there were numerous improper references to appellant's failure to explain his presence and conduct to Officer McVey, the most blatant of which came during the State's closing argument. We find that the admission of such evidence was prejudicial. Accordingly, because it is improper for a prosecutor to make a statement that is "fairly susceptible" of being understood as a comment on a defendant's exercise of his right to silence under the Fifth Amendment, we reverse appellant's conviction and remand for a new trial. See Dailey v. State, 594 So.2d 254, 258 (Fla.1991).
REVERSED and REMANDED.
GLICKSTEIN and SHAHOOD, JJ., concur.
NOTES
[1] See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] See Berkemer v. McCarty, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)(explaining that "[t]he comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that Terry stops are subject to the dictates of Miranda."); accord State v. Ruiz, 526 So.2d 170 (Fla. 3d DCA 1988); T.J. v. State, 452 So.2d 107 (Fla. 3d DCA 1984); Crum v. State, 281 So.2d 368 (Fla. 2d DCA 1973).
[3] Furthermore, it has been held that the Florida constitution provides a greater privilege against self-incrimination than the federal constitution provides. See Hoggins v. State, 689 So.2d 383, 386 (Fla. 4th DCA), review granted, 697 So.2d 512 (Fla.1997).