746 So.2d 547 (1999)
Alpha McNEIL, Appellant,
v.
STATE of Florida, Appellee.
No. 98-2217.
District Court of Appeal of Florida, Fifth District.
December 10, 1999.
*548 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Alfred Washington, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, J.
Alpha McNeil appeals the denial of his motion to suppress cocaine. We reverse.
In February 1998, McNeil was adjudicated guilty of possession of cocaine and tampering with physical evidence. The court placed him on probation for 30 months. In April 1998, he was arrested and charged with possession of cocaine[1] and resisting arrest without violence.[2] He was further charged with violating his probation in the earlier case based on the cocaine possession and the uncharged crime of tampering with evidence.
McNeil filed a motion to suppress arguing the cocaine was found as a result of an illegal investigatory detention. At the suppression hearing, the arresting officer testified that while on patrol he observed McNeil coming from behind a shopping plaza at approximately 3:00 a.m. Since the businesses were closed at that time, the officer viewed McNeil's activity as suspicious. He also observed what appeared to be a quart bottle of beer in McNeil's back pants pocket. The officer called McNeil over and, although directed by the officer to keep his hands out of his pockets, as McNeil approached he put his left hand into his front pants pocket three times. Concerned for his own safety, the officer repeatedly told McNeil to remove and keep his hand from the pocket. Finally, he ordered McNeil to put his hands on the rear of the patrol car "to get his hand out of his pocket." McNeil obeyed.
As the officer prepared to perform a pat down, he noticed a wadded piece of brown paper in McNeil's left fist. The officer testified his training and experience told him McNeil "was trying to conceal something within the paper" but he never testified that he thought McNeil had a weapon or drugs. The officer attempted to wrest the paper from McNeil, but McNeil resisted and put the paper in his mouth. The officer tried unsuccessfully to pull McNeil's arm away from his mouth. However, during the scuffle[3], a white, rock-like substance fell from the paper. Field testing determined the substance was cocaine. The trial court found the officer's actions reasonable under the circumstances and denied the motion to suppress. McNeil thereafter pled nolo contendere to possession of cocaine, resisting arrest without violence and violation of probation, reserving his right to appeal the denial of his motion.
The trial court erred in denying the motion. McNeil was seized when the officer ordered him to place his hands on the back of the patrol car. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (seizure occurs when one's freedom of movement is restrained by physical force or show of authority); State v. Brown, 616 So.2d 124 (Fla. 2d DCA 1993) (consensual encounter elevated to stop when officer ordered individual to put his hands on police cruiser). The first issue for this court is whether the officer had a founded suspicion to stop McNeil. We think there was. To effect a lawful investigatory stop, an officer must have a founded suspicion, or a reasonable articulable suspicion, that the person detained has committed, is committing or is about to commit a crime. § 901.151(2), Fla. Stat. (1997)[4]; Terry; Popple v. State, 626 So.2d *549 185 (Fla.1993). Mere suspicion does not suffice. Popple.
Considering the totality of the circumstances before us, the officer formed a founded suspicion that McNeil was involved in some form of criminal activity and that he was in possession of a weapon. McNeil's presence at the shopping center at 3:00 a.m. and his failure to obey a command to keep his hands out of his pocket and in plain view were sufficient to give the officer a founded suspicion of criminal activity and that McNeil was in possession of a weapon. Accordingly, an investigatory stop and a frisk for weapons was proper. See Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979); Charton v. State, 716 So.2d 803, 804 (Fla. 4th DCA 1998)(holding that stopping a person at 2:30 a.m. behind a closed strip shopping mall was lawfully predicated upon a founded suspicion that appellant was involved in some form of criminal activity); but see Mayhue v. State, 659 So.2d 417 (Fla. 2d DCA 1995) (investigatory stop not justified where officer only saw defendant pushing shopping cart containing television set around high crime area at 7:00 a.m.). However, these facts did not establish a legal basis to expand the limitation of the Terry stop and frisk. Dickerson, 508 U.S. at 373, 113 S.Ct. 2130. Terry and Florida's Stop and Frisk Law allowed the officer to pat down McNeil for weapons. During the suppression hearing, the officer testified that before he commenced the frisk of McNeil for weapons, based on his training and experience as a street officer, he believed McNeil was trying to conceal "something" within a piece of paper in his hand. The officer did not testify that he believed that the "something" was a weapon. The officer also did not state that the "something" appeared to be contraband.[5] As a result, the record *550 does not support the trial court's ruling that the officer had a legal basis to expand the instant seizure and search beyond the boundaries of a Terry stop and frisk. See Ricks v. State, 549 So.2d 789, 790 (Fla. 5th DCA 1989) (holding that a bare suspicion that a defendant may be trying to conceal contraband in their mouth is insufficient to justify a search); see also Cummo v. State, 581 So.2d 967, 968 (Fla. 2d DCA 1991); cf. I.T. v. State, 614 So.2d 582 (Fla. 3d DCA 1993) (holding that officer's plain view observation of plastic baggie used for narcotics sticking out of defendant's pocket provided legal basis for seizure and search).
The motion to suppress was dispositive of the cocaine possession and probation violation charges.[6] In addition, McNeil was entitled to resist the unlawful search without violence. Jay v. State, 731 So.2d 774 (Fla. 4th DCA 1999); Norton v. State, 691 So.2d 616 (Fla. 5th DCA), rev. denied, 698 So.2d 1225 (Fla.1997); Mayhue. Accordingly, those convictions and sentences are reversed.
REVERSED.
ANTOON, C.J., concurs in result only.
W. SHARP, J., dissents, with opinion.
W. SHARP, J., dissenting.
The Fourth Amendment issue in this case is whether the police officer, based on his training and experience, had probable cause to believe McNeil had possession of contraband concealed in the brown paper packet, visible in his hand, coupled with the fact that McNeil almost instantly disposed of the packet by swallowing it. The police officer testified he thought McNeil was trying to conceal "something" in the paper. He tried to prevent McNeil from swallowing it, but was unsuccessful. Then he testified he transported McNeil immediately to the hospital because "based on my training and experience I believed he had swallowed cocaine."
This case would have been more clearly an affirmance had the police officer testified that based on his training and experience, he had probable cause to think the package contained cocaine because of its appearance when he first saw it in McNeil's hand.[1] However, I think that is basically what the police officer testified. The events happened almost simultaneously the officer seeing the packet in McNeil's hand, his effort to prevent McNeil from swallowing it, and McNeil's success in putting it into his mouth. All of these things contributed to the officer's belief McNeil possessed contraband. In my view, these circumstances provided a valid basis for the trial judge to conclude that the officer had grounds to arrest McNeil and seize (or try to seize) the contraband. I would affirm.
NOTES
[1] § 893.13(6)(a), Fla. Stat. (1997).
[2] § 843.02, Fla. Stat. (1997).
[3] According to the arrest report, McNeil pulled away "and had to be physically restrained while he went to the ground."
[4] § 901.151. Stop and Frisk Law

(1) This section may be known and cited as the "Florida Stop and Frisk Law."
(2) Whenever any law enforcement officer of this state encounters any person under circumstances which reasonably indicate that such person has committed, is committing, or is about to commit a violation of the criminal laws of this state or the criminal ordinances of any municipality or county, the officer may temporarily detain such person for the purpose of ascertaining the identity of the person temporarily detained and the circumstances surrounding the person's presence abroad which led the officer to believe that the person had committed, was committing, or was about to commit a criminal offense.
* * *
(5) Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has probably cause to believe that any person whom the officer has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, the officer may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.
[5] Q. Did there come a point in time did he remove his left hand from his pocket?

A. Yes.
Q. Did you notice anything unusual in his hand?
A. Yes.
Q. What did you notice?
A. A brown piece of paper in his left hand in kind of a fist-type grab.
Q. You're gesturing. Was the paper wadded up?
A. Sort of; yes.
Q. Based on your training and experience as a street police officer, what did that mean to you?
A. Meant he was trying to conceal something within the paper.
Q. Did you get your hands on the paper at some point in time?
A No, I didn't.
Q. When you noticed this brown piece of paper bunched up in his left hand, what did you do?
A. I tried to obtain it for my investigation to see what it was.
Q. Did the Defendant comply or resist you in your effort to retain the paper?
A. He resisted at that point.
Q. What did he do?
A. He tensed up and put the paper in his mouth.
[6] See Sites v. State, 582 So.2d 813 (Fla. 4th DCA 1991) (reversing conviction for tempering with evidence where evidence should have been suppressed for illegal search).
[1] Bryant v. State, 577 So.2d 1372 (Fla. 1st DCA 1991); State v. Stregare, 576 So.2d 790 (Fla.2d DCA 1991); Rodriguez v. State, 557 So.2d 190 (Fla. 1st DCA 1988); Palmer v. State, 467 So.2d 1063 (Fla. 3d DCA 1985); State v. Ellison, 455 So.2d 424 (Fla. 2d DCA 1984).