DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SHARNIKA LASHAY MOORE-BRYANT,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2023-0855

[May 15, 2024]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Daliah H. Weiss, Judge; L.T. Case No. 502019CF005141A.

Carey Haughwout, Public Defender, and Jeffrey L. Anderson, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Alexandra A. Folley, Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

Appellant appeals her conviction for manslaughter with a weapon, alleging that the trial court erred in allowing the detective to testify that marks on the victim's body were consistent with an iron.[1] We find that the trial court did not err by allowing the detective's testimony. As such, we affirm.

Appellant was charged with second-degree murder with a firearm. In its opening statement, the state argued that appellant "murdered" the victim because the victim demanded appellant return the car she had been borrowing from him. Appellant visited the victim's house, where the two watched movies, smoked marijuana, and ordered food. During the morning, appellant went to the car and retrieved her purse, which

---

[1] Appellant also alleges that she was entitled to a twelve-person jury under the Sixth and Fourteenth Amendments of the United States Constitution. Appellant's argument has been rejected by this court in *Guzman v. State*, 350 So. 3d 72 (Fla. 4th DCA 2022), *review denied*, SC2022-1597, 2023 WL 3830251 (Fla. June 6, 2023), *cert. pending*, No. 23-5173 (U.S. July 21, 2023).

contained the firearm she used to kill the victim. The victim suffered gunshot wounds, facial lacerations, and "hits from an iron" as well as other injuries.

During the state's case, a medical examiner testified that the victim was shot once in the back and once in the abdomen. The medical examiner determined that the victim's cause of death was the gunshot to the abdomen. A crime scene investigator took photographs and video footage of the crime scene, which were introduced into evidence, including photos of a projectile and casing found in the couch, a food delivery box found in a garbage can outside the victim's residence, and an iron found inside the residence.

The victim's phone was recovered about four blocks from the victim's residence. The car that appellant was borrowing from the victim was also searched, and a casing was found in appellant's purse in the back seat of the car. A forensic scientist testified that the two casings which were recovered, one in the victim's house and one in appellant's purse, were fired from the same gun.

An iron was also found at the crime scene. The state called a forensic scientist from the Palm Beach County Sheriff's Office who testified that the iron handle tested positive for blood. DNA testing of the blood indicated three contributors. There was "very strong support" that both appellant and the victim were contributors to the DNA profile obtained.[2] A "non-blood-like substance" also was found on the iron handle that had two contributors. DNA testing of that substance also indicated "very strong support" that the victim was a contributor. Appellant was excluded from being a contributor.

The lead detective testified to seeing the victim's body lying just inside the doorway. The detective was asked about the victim's body, and he stated that the victim had a gunshot wound to the back with a corresponding exit wound, a gunshot wound to the abdomen with no exit wound, and "what appeared to be like an iron form on his back." The

---

[2] The forensic scientist testified regarding the presence of blood as to the victim, stating that "the DNA profile obtained is approximately one nonillion times more likely if it originated from [the victim] and two unknown individuals than if the DNA profile obtained originated from three unknown individuals in the population." Similarly, as to the presence of appellant's blood, "the DNA profile obtained is approximately 700 billion times more likely if it originated from [appellant] and two unknown individuals in the population than if the DNA profile obtained originated from three unknown individuals in the population."

2

detective continued to testify about the victim's body, specifically regarding the marking on the victim's back:

> Q. All right. And then you said a marking on his back that looked like it came from what?
>
> A. It resembled an iron.
>
> Q. Did you find an iron on scene?
>
> A. Yes.
>
> . . . .
>
> Q. Besides the gunshot wounds, so the one to the abdomen and the one to the back, did you notice anything else about the decedent's body externally?
>
> A. Well, the iron-resembling figure on his back, on the upper left side of his head there were several scrapes and cuts and injuries.
>
> . . . .
>
> Q. Okay. And you testified about seeing markings on the decedent that would be consistent with an iron, is that correct?
>
> A. Yes.

Only at this point did the defense object on grounds of speculation. The trial court overruled this objection.

The detective testified that it looked like a violent struggle had taken place and that blood "was smeared around all over the floor." A bullet casing and a projectile were found in and around the couch. Using the victim's phone records, the detective was able to determine that appellant contacted the victim right before appellant arrived at the victim's residence. The detective discovered video surveillance from the residence across the street from the victim's house. The surveillance video was played for the jury. The video showed a black vehicle, which appellant had borrowed from the victim, arrive at the victim's house. An individual wearing all black clothing exited the vehicle and entered the victim's house. Appellant admitted later during her testimony at trial to being the individual in the video. The video also showed a delivery vehicle pull up to the victim's residence. About two hours after the delivery, an individual

3

wearing dark clothing carrying something white got into the black vehicle and left.

The detective testified that, two days after the homicide, appellant spoke with the detective. The detective noticed visible injuries to appellant, including a bite mark on appellant's arm. Initially, appellant denied being with the victim on the day in question, but she eventually admitted to being at the victim's residence. Appellant said nobody else was at the victim's home, just her and the victim. Appellant said that there was no altercation between her and the victim, and that nothing out of the ordinary took place. Appellant did not admit to the homicide. Appellant also said the victim gave her the car and he had started to ask for it back.

Appellant testified at trial that she went to the victim's house to smoke and hang out. Appellant said she sat on the couch and the victim started groping and kissing her, which made her uncomfortable, so she asked him to stop. The two then started watching a movie. At some point, appellant went to her car to get her purse because she had marijuana in her purse. Appellant also ordered food using the victim's phone. After she ordered the food, appellant placed the victim's phone on top of her purse.

Appellant testified that she fell asleep while she and the victim were watching movies. She woke up and the victim was hovering over her with a gun to her head, while the victim was accusing appellant of using him. Appellant testified that she believed this was a "life or death" situation, so she then kneed the victim in the groin, and he fell off the couch. Appellant tried to get the gun from the victim because she believed the victim would kill her if she did not. Appellant testified that the victim then bit her and hit her in the head with an iron. Ultimately, appellant gained possession of the gun and shot the victim. Appellant said she shot the victim "[o]nce, could have been twice." She said it all happened so fast, and she had gaps in her memory over the struggle.

Appellant stated that, after the victim fell, appellant picked up a shell casing, put it in her purse, then put the gun in the food delivery box, and left. Appellant said she took the gun because she panicked. When appellant got home, she realized she still had the victim's phone, so she turned it off so it could not be tracked and put it in a trash can a couple of blocks from her house. Appellant also dumped the gun in a different location than where she left the victim's phone. Appellant spoke with the police several times and testified that she lied to the police because she was scared.

The jury found appellant guilty of the lesser-included offense of

4

manslaughter with a firearm.  This appeal follows.

"The standard of review for a lower court's ruling on the admission or exclusion of evidence is abuse of discretion, and that discretion is limited by the rules of evidence." *Boggess v. State*, 269 So. 3d 616, 619 (Fla. 4th DCA 2019).

First, the issue regarding the detective's testimony on iron markings has not been preserved for appellate review.  "Generally, to raise an error on appeal, a contemporaneous objection must be made at the trial level when the alleged error occurred." *J.B. v. State*, 705 So. 2d 1376, 1378 (Fla. 1998).  A contemporaneous objection "places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings." *Castor v. State*, 365 So. 2d 701, 703 (Fla. 1978); *see State v. Pacchiana*, 289 So. 3d 857, 862 (Fla. 2020) (finding that defense counsel's comment of "[t]hat's a religious based strike," was not "a clear and specific legal objection to the constitutionality of the strike based on religion"; thus, there was no "clear initial contemporaneous objection" preserving the defendant's objection to a peremptory strike).  Appellant waived this issue by failing to object the first three times the detective testified that the markings on the victim's back looked like iron markings.  Thus, this issue was waived for appellate review.  *See Norton v. State*, 709 So. 2d 87, 94 (Fla. 1997) ("As the State correctly points out, defense counsel's failure to raise a contemporaneous objection to the comment at the time it was made waived his right to argue this issue on appeal.").

Additionally, this issue was not preserved because appellant raised a general "speculation" objection at trial instead of alleging improper lay opinion testimony.[3]  Appellant now argues that the detective provided impermissible lay opinion testimony, because he was not an expert witness nor was a sufficient predicate demonstrating his expertise

---

[3] "Generally, a lay witness may not testify in terms of opinion or inference. . . . [I]f the witness is not testifying as an expert, the testimony of the witness in the form of opinion or inference is limited to those opinions or inferences when: (1) the witness cannot readily and with equal accuracy and adequatecy [sic] communicate what the witness perceived without testifying in terms of opinion or inference, (2) the use of opinion or inference will not mislead the trier of fact to the prejudice of the adverse party, and (3) the opinion and inference does not require special knowledge, skill, experience or training within the scope of section 90.702."  Charles W. Ehrhardt, 1 Fla. Prac., Evidence § 701.1 (2023 ed.).

established.[4]   However, appellant only raised a speculation objection at trial.  *Gordon v. State*, 350 So. 3d 25, 34 (Fla. 2022) ("[I]n order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below.") (citation omitted).   An objection to speculation does not preserve an improper opinion testimony argument.  *Chavers v. State*, 964 So. 2d 790, 793 (Fla. 4th DCA 2007).

In *Chavers*, the officer testified that he saw the appellant throw packages looking like drug containers out the window.  *Id.*  On appeal, the appellant argued "that because the officer did not specifically testify to his experience with cocaine, there was no basis for admitting his opinion that the substance allegedly dumped out of appellant's car window was cocaine."  *Id.*   This court held that the appellant's argument was unpreserved, because he objected at trial to speculation, and "[a]n objection that the testimony was speculative is not sufficient to place the trial court on notice of any alleged error in admitting opinion evidence without proper foundation."  *Id.*

In the instant case, appellant argues that the trial court erred in admitting the detective's testimony that the marks on the victim's back were consistent with marks made by an iron without establishing "sufficient expertise to render such a conclusion."   Like in *Chavers*, appellant is now arguing that there was "no basis" to admit the detective's opinion.  Thus, appellant's objection to speculation differs from there being no foundation for lay testimony, and as a result, the objection did not preserve the issue raised on appeal.

Further, the detective was not speculating because the detective who testified actually observed the crime scene.  "[A] speculation objection is rooted in section 90.604, Florida Statutes, which requires a witness to have personal knowledge of any matter testified to."  *Orton v. State*, 212 So. 3d 377, 379 (Fla. 4th DCA 2017).  In this case, the trial court did not err by admitting the detective's testimony that the markings on the victim's back were consistent with an iron because the detective was testifying from his own actual personal observations of the victim's body.

*Floyd v. State*, 569 So. 2d 1225 (Fla. 1990), is persuasive.  In *Floyd*, the defendant argued "that several of the state's nonexpert witnesses gave

---

[4] Appellant's initial brief argues that the detective testified as a lay witness and that "[c]onclusions as to what made impressions on skin, or injuries, has been deemed inadmissible speculation *unless a sufficient expertise to render such a conclusion has been established.*"  (emphasis added).

improper opinion testimony," including a sergeant who testified that the bruise and injury to the decedent's nose "would have been consistent with being struck with the glasses on [and] . . . was indicative . . . of a fight or a struggle." *Id.* at 1231. The Florida Supreme Court found the testimony to be "within the permissible range of lay observation and ordinary police experience," and, thus, held that the trial court did not abuse its discretion in admitting the testimony. *Id.* at 1232. Similarly, in this case, the detective's testimony that the "markings on the decedent that would be consistent with an iron" would have been within the permissible range of lay observation and "ordinary police experience." The detective was describing the victim's body, which the detective had observed, and commenting on his impressions of the victim's body. *Nardone v. State*, 798 So. 2d 870, 873 (Fla. 4th DCA 2001) ("In *Floyd*, the officer was describing a crime scene *he observed* and his impressions from the disarray.") (emphasis added). Moreover, the detective testified to finding an iron on the scene. The detective personally observed both the markings on the victim's body and the iron itself. The detective's testimony was based on his personal observation that the markings he saw on the victim's back were consistent with that of an iron, which was also found at the crime scene. *See Peacock v. State*, 160 So. 2d 541, 543 (Fla. 1st DCA 1964) (finding deputy's testimony giving a visual comparison of appellant's tires to casts made from tire prints found at the robbery victim's premises was not improper because "[o]ne does not have to be specially trained in order to make a visual comparison of this character"). Thus, the trial court did not err by admitting this testimony.

The cases cited by appellant are not persuasive. All the cases cited by appellant regard testimony by expert witnesses. As admitted by appellant, the detective was a lay witness, not an expert witness. "An expert witness may testify only in his or her area of expertise. An expert opinion must not be based on speculation, but on reliable scientific principles." *Gilliam v. State*, 514 So. 2d 1098, 1100 (Fla. 1987). In each of the three cases cited by appellant, the court concluded that the expert witness's testimony was neither reliable nor scientific and should not have been allowed. *Id.*; *Fisher v. State*, 361 So. 2d 203, 204 (Fla. 1st DCA 1978); *Wright v. State*, 348 So. 2d 26, 29, 31 (Fla. 1st DCA 1977). Because the detective was a lay witness, these cases are inapplicable to the instant case.

We find the trial court did not err in allowing the detective to testify that the markings on the victim's back were consistent with an iron, because the detective was testifying as to his own personal observations of the victim's body and his ordinary knowledge of iron markings. Further, even if the trial court had erred, any error was harmless because the objected to testimony was cumulative to the detective's unobjected to testimony.

7

"The harmless error test . . . places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction." *State v. DiGiulio*, 491 So. 2d 1129, 1138 (Fla. 1986). "An error in the introduction of evidence may be considered harmless if the evidence is merely cumulative to other evidence that was properly introduced." *Johnson v. State*, 204 So. 3d 521, 522 (Fla. 4th DCA 2016) (citation omitted); *Liscinsky v. State*, 700 So. 2d 171, 172 (Fla. 4th DCA 1997) ("In any event, if such were error, we deem it harmless because the officer's testimony was merely cumulative of several other witnesses' testimony at trial.").

The detective testified four times that there appeared to be an iron mark on the victim's back. Appellant only objected the fourth time. There was no difference in any of the detective's statements. Thus, because the detective's first three statements were introduced without objection, and the fourth statement was merely cumulative to the prior statements, any error would be deemed harmless.

In sum, this issue has not been preserved for appellate review because appellant did not make a contemporaneous objection and appellant's objection at trial alleging speculation differed from her argument on appeal. Further, the trial court did not err in overruling appellant's objection because the detective was testifying to his own personal observations and knowledge. Lastly, any error would be harmless because the detective's testimony was cumulative to the first three times the detective testified without objection. As such, we affirm.

*Affirmed.*

KLINGENSMITH, C.J., and MAY, J., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***

8